# The City of St. Louis v. The Bell Telephone Company, *Appellant.*

1. **Corporations**: TELEPHONE COMPANY. A telephone company organized under article 5, of chapter 21 of the Revised Statutes of 1879, has all the powers therein conferred upon such corporations, among which are the power to own and operate lines of telephone, to make reasonable charges for the use of the same, to erect its poles along and across public roads and streets and to condemn private property for a right of way.

2. ———— : ————. It is charged with the duty of receiving and transmitting messages with impartiality and in good faith.

3. ———— : ———— : REGULATION BY STATE. Such corporation is subject to public regulations, and the state has the power to fix and prescribe a maximum rate for telephone service ; and it may delegate such power to municipal corporations.

4. **Municipal Corporations**: POWERS. Municipal corporations possess and can exercise only : (1) Such powers as are granted in express words ; (2) those necessarily or fairly implied in or incident to the powers expressly granted ; (3) those which are essential to the declared objects and purposes of the corporation.

5. ———— : ————. Any fair, reasonable doubt concerning the existence of a power of a municipal corporation will be resolved against the corporation, and the power denied.

6. ———— : ———— : USE OF STREETS : ST. LOUIS. The power of the city of St. Louis to regulate the use of its streets extends to new uses as they spring into existence from time to time, as well as to uses common and known at the time of the grant of the power.

7. ———— : ———— : ———— : ———— : TELEPHONE COMPANY. The erection and maintenance of telephone poles is one of these new uses and is a proper use of the streets.

8. ———— : ———— : ———— : ———— : ————. But the power to regulate charges for telephone service is neither included in, nor incidental to, the power to regulate the use of the streets, and an ordinance regulating such charges cannot be upheld upon any such ground.

| 96 | 623 |
|----|-----|
| 105 | 575 |
| 96 | 623 |
| 46a | 461 |
| 96 | 623 |
| 48a | 492 |
| 48a | 651 |
| 96 | 623 |
| 120 | 9 |
| 96 | 623 |
| 123 | 558 |
| 96 | 623 |
| 64a | 367 |
| 96 | 623 |
| 134 | 561 |
| 134 | 574 |
| 96 | 623 |
| 145 | 574 |
| 145 | 588 |
| 147 | 318 |
| 80a | 437 |
| 96 | 623 |
| 84a | 10 |
| 96 | 623 |
| 97a 5 | 24 |

9. —— : —— : CHARTER OF ST. LOUIS : TELEPHONE COMPANIES : EJUSDEM GENERIS. Telephone companies are *ejusdem generis* with telegraph companies under subdivision 5, of section 26, of article 3, of the charter of the city of St. Louis giving the mayor and assembly power to license, tax and regulate "telegraph companies as corporations, etc., and all other business, trades, avocations or professions whatever."

10. —— : —— : —— : ——. While the city, under this provision of the charter, has the power to make police regulations as to the mode in which the business of telephone companies shall be exercised, it does not empower it to pass an ordinance regulating telephone charges.

11. —— : —— : —— : ——. The city cannot pass an ordinance regulating telephone charges under the power in the general welfare clause of its charter giving it authority to pass all such ordinances, not inconsistent with the provisions of the charter or the laws of the state, as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures, and to enforce the same by fine; nor has it power to pass such an ordinance under any of its charter powers.

*Appeal from St. Louis Court of Criminal Correction.*
HON. CHAS. F. CADY, Judge.

REVERSED.

*Hitchcock, Madill & Finkelnburg* for appellant.

(1) A municipal corporation possesses and can exercise the following powers and no others: (*a*) Those granted in express words; (*b*) those necessarily or fairly implied in or incident to the powers expressly granted; (*c*) those essential to the declared objects and purposes of the corporation—not simply convenient but indispensable. 1 Dill. Mun. Corp. [3 Ed.] sec. 89. The power of the municipal authorities is exclusively confined to the limits prescribed by the charter and such ordinances as are passed in conformity thereto. *City v. Swope*, 79 Mo. 448-9; *Leach v. Cargill*, 60 Mo. 317; *Cape Girardeau*

*v. Riley*, 72 Mo. 223-4 ; *Corrigan v. Gage*, 68 Mo. 544; *St. Louis v. Weber*, 44 Mo. 547. "Unless there is a legislative grant in the city charter conferring the power it does not exist; for with the exception of certain incidental powers which are necessary to carry out express grants, the charter itself must furnish the measure of authority to be exercised." *St. Louis v. Laughlin*, 49 Mo. 562. (2) The city charter of St. Louis contains no grant of power, express or implied, authorizing the municipal assembly to fix or limit the price of telephone service in said city. (*a*) It is admitted that no such power is expressly granted. The charter nowhere mentions telephones or telephone companies ; no doubt, because such things were unknown in 1876, when it was adopted. (*b*) It is not claimed that any such power is essential to the purposes of said corporation. (*c*) No such power is necessarily or fairly implied in or incident to any power expressly granted. This appears upon inspection of the fourteen clauses of article 3, section 26, of said charter, which enumerate the authorized subjects of municipal legislation. Each of these clauses except the fourteenth, or "general welfare clause," relates to some specified subject or subjects, no one of which have any relations whatever to telephones, still less to fixing the rate or price for using them. (*d*) No such power can be deduced from the "general welfare clause." It is settled that such a clause confers no powers except such as are clearly necessary to carry out the powers already expressly granted. To claim this power under that clause would be to claim an unlimited power of municipal legislation. *St. Louis v. Laughlin*, 49 Mo. 563-4. (*e*) The doctrine of *ejusdem generis* is not applicable here. No power to fix or limit the rates or prices of any article or business is conferred by the charter except in certain specified cases, namely (in clause 4) ferry rates and wharfage, (in clause 5) rates for carriage, cartage of persons and property, (in clause 7) the price

and quality of gas, (in clause 11) street railway fares. But each of these is an express grant, confined to the subject mentioned, and not accompanied by any general words. R. S. 1879, pp. 1585-8; *St. Louis v. Laughlin*, 49 Mo. 563-4; *St. Louis v. Herthel*, 14 Mo. App. 471-2; s. c. affirmed, 88 Mo. 130-1. (*f*) No such power can be deduced from the grant of power in clause 5, section 26, article 3, of the charter, to "license, tax and regulate" the several kinds of business therein mentioned; because, (1) no power to "license, tax and regulate" telephones or telephone companies is included or mentioned therein. (2) If it had been, yet the power to "license, tax and regulate" is altogether distinct from and does not include or imply a power to fix the rates of telephone service, any more than to fix or limit the fees of attorneys or physicians, or the price of concert tickets,—as plainly appears from the express provisions of said clause 5.

*Leverett Bell* for respondent.

(1) Telephone companies are public corporations and common carriers, making use of the streets of the city to transact their business, and possessing the right of eminent domain, and they are subject to regulation by the state as to their charges, under its police power. R. S. secs. 875, 879, 880, 883; *State v. Telephone Co.*, 17 Neb. 126; *State v. Telephone Co.*, 36 Ohio St. 296; *Julia Building Ass'n v. Telephone Co.*, 88 Mo. 258; *Munn v. Illinois*, 94 U. S. 113; *Railroad v. Iowa*, 94 U. S. 155; *Peik v. Railroad*, 94 U. S. 164; Cooley Const. Lim. [5 Ed.] 739; *Belcher Co. v. Elevator Co.*, 82 Mo. 121; *Hockett v. Indiana*, 105 Ind. 250. (2) The city charter of St. Louis has, by transfer from the state, vested in the municipal government, authority to establish by ordinance the maximum annual charge for the use of a telephone within the city. City Charter, sec. 26, art. 3, pars. 2, 5, 14; 2 R. S. p. 1585, 1586, 1588; *St. Louis v.*

*Herthel,* 88 Mo. 128 ; *Merz v. Railroad,* 88 Mo. 672; *Railroad v. Richmond,* 96 U. S. 521 ; *Ferrenbach v. Turner,* 86 Mo. 416. (3) The provisions contained in article 5 of chapter 21 of the Revised Statutes, relating to telephone companies, do not, by implication or otherwise, repeal any provision in the city charter, nor impair the power of the state or the city to regulate telephone charges.

BLACK, J.—This was a prosecution against the Bell Telephone Company of Missouri for the violation of an ordinance which provides that "the annual charge for the use of the telephone in the city of St. Louis shall not exceed fifty dollars." A violation of the ordinance is made a misdemeanor, and subjects the offender to a fine of not less than fifty dollars nor more than five hundred dollars. The defendant appealed from a judgment assessing a fine of three hundred dollars against it.

The defendant is a corporation organized under article 5 of chapter 21 of the Revised Statutes of this state, and hence has all the powers therein conferred upon such corporations. Among others, they have the power to own and operate lines of telephone, to make such reasonable charges for the use of the same as they may establish, to erect their poles along and across public roads and streets, to condemn private property for a right of way, and they are charged with the duty of receiving and transmitting messages with impartiality and in good faith. The defendant neither affirms nor denies the power of the state itself to fix a maximum rate of charges, but does contend that no such power has been delegated to the city of St. Louis. The defendant's property, consisting of poles, wires, fixtures, and the like, is, of course, private property ; but the property is devoted to public use, and since the defendant has conferred upon it special franchises and privileges, including the right of eminent domain, the corporation is subject to public regulations; and we shall

take it for granted that the state has the power to fix and prescribe a maximum rate for telephone service.

That this power could be delegated to municipal corporations is equally clear. The ordinances of the city of St. Louis must not be in conflict with the general laws of the state. If the city has had this power to fix rates conferred upon it, then an ordinance which fixes reasonable maximum rates would not be in conflict with the law under and by virtue of which the defendant is organized, and which law constitutes its charter. A telephone company, when once its poles are planted and wires stretched on or over the streets of a city, becomes in effect a monopoly, and the company must submit to such reasonable regulations as the municipal corporation has power to prescribe.

The important question, then, is whether the city of St. Louis has the power to enact the ordinance in question, the power to fix reasonable maximum charges for telephone service, and nothing to the contrary being shown in this case, it is assumed that the rate fixed is reasonable, so that the question is narrowed down to one of power on the part of the city to fix telephone rates at all. If the city has such power, it must be found in a reasonable and fair construction of its charter. Judge Dillon makes this full and comprehensive statement of the rule as to municipal powers: "It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers and no others:* (1) Those granted in *express words;* (2) those *necessarily or fairly implied* in or *incident* to the powers expressly granted; (3) those *essential* to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." 1 Dill. Mun. Corp. [ 3 Ed.] sec. 89 ; see also *St. Louis v. McLaughlin,* 49 Mo. 562. The

rule, as before stated, is in accord with what we said in the *City of St. Louis v. Herthel*, 88 Mo. 128.

The city places some reliance on its general power to regulate the use of the streets. This power extends to new uses as they spring into existence from time to time, as well as to uses common and known at the time of the dedication or grant of the power to the municipal corporation. *Ferrenbach v. Turner*, 86 Mo. 416. The erection and maintenance of telephone poles is one of these new uses; and is a proper use of the streets. *Julia Building Ass'n v. Bell Telephone Co.*, 88 Mo. 258. That the company is subject to reasonable regulations prescribed by the city, as to planting its poles and stringing its wires and the like, is obvious. Such regulations have been obeyed by this defendant.

Conceding all this, we are at a loss to see what this power to regulate the use of the streets has to do with the power to fix telephone charges. The power to regulate the charges for telephone service is neither included in nor incidental to the power to regulate the use of streets, and the ordinance cannot be upheld on any such ground.

By the fifth subdivision of section 26, article 3, of the charter of St. Louis, the mayor and assembly have power "to license, tax and regulate lawyers, doctors, etc., etc., telegraph companies or corporations, etc., etc., and all other business, trades, avocations or professions whatever." Telephone companies are not mentioned, though a vast number of trades, professions and avocations are specified. They are not mentioned in all probability because not existing at the date of the charter. In construing this paragraph of the charter we held in the case of *City of St. Louis v. Herthel*, *supra*, that architects were, for purpose of construction, *ejusdem generis* with lawyers, doctors, dentists and artists, and, therefore, included by the general concluding words. So in this case it may with equal propriety

be taid that telephone companies are *ejusdem generis* with telegraph companies, and therefore included in the words of the general concluding clause.

It can make no sort of difference that these telephone companies were not in existence at the date of the charter. ᛫ One of the objects had in view by the use of the general clause was to provide for just such cases. As aptly observed in that case (*City of St. Louis v. Herthel, supra*), "we are to construe it (the charter) according to the intent of the framers, and that intent must be gathered from the language and object of the charter provisions and giving that language an interpretation neither strict nor strained."

Does, then, the power to regulate telephone companies, when that term is coupled with the powers to license and tax, give the city the power to regulate the charges for telephone service? By the general statutes of Massachusetts of 1860, page 167, it is provided that the mayor and aldermen of any city may make rules and orders for the regulations of carriages, and may receive one dollar annually for each license granted to a person to use a carriage in the city. Under this power, it was held, in *Commonwealth v. Gage*, 114 Mass. 328, that a city might fix the compensation to be charged by hackney coachmen. That case would at first seem to furnish some authority for the claim made by the city in this case. Turning to other provisions of the charter, however, we find that express power is given to establish ferry rates; to fix the rates for carriage of persons, and of wagonage, drayage, and cartage of property; to regulate the price of gas, and to regulate and control railways within the city as to their fares, hours and frequency of trips. These express powers to fix prices, fares, and charges, in these specified cases, are followed by no general words. With this specific enumeration of cases where the city may regulate the compensation to be charged, it impliedly appears that such a power was not intended to be given in other cases. This con-

clusion presents itself with more force when we see that by the clause before quoted, the city has power to license, tax and regulate private carriages, omnibuses, carts, drays, and other vehicles; so that the framers of the charter did not regard the power to license, tax and regulate sufficient to give the power to fix rates and charges.

The power to "regulate," it may be conceded, gives the city the right to make police regulations as to the mode in which the designated employment shall be exercised. 1 Dill. on Mun. Corp. sec. 358. But taking these charter provisions together, we think it would be going to an extreme length to say that they confer upon the city the power to fix telephone rates. If it has power to do this, it may also fix the charges for telegraph services and for the other designated services which are of a public character. We conclude that the city has no power to pass the ordinances in question by reason of any of the charter powers before considered.

This brings us to the general welfare clause, which is in these words : "Finally, to pass all such ordinances, not inconsistent with the provisions of this charter, or the laws of the state, as may be expedient, in maintaining the peace, good government, health and welfare of the city, its trade, commerce, and manufactures, and to enforce the same by fines," etc. Sometimes the power to enact ordinances is given in general terms, and in other cases there is a specific enumeration of the powers. "This difference," says Dillon, "is essential to be observed, for the power which the corporation would possess under whas may be termed the ' general welfare clause,' *if it stood alone*, may be limited, qualified, or, when such intent is manifest, impliedly taken away by provisions specifying the particular purposes for which by-laws may be made." 1 Dill. Mun. Corp. [3 Ed.] sec. 315.

Under a general power like the one now in question this court has held that the city may pass ordinances

concerning vagrants, prohibiting persons from keeping open their places of business on Sunday and prohibiting cruelty to dumb animals. *St. Louis v. Schoenbush*, 95 Mo. 618, and cas. cit. These matters are all police regulations, strictly speaking, and naturally fall within the domain of municipal legislation and regulation. To say that under this general power the city may fix rates for telephone services would be going entirely too far. This conclusion is manifest when we consider that the charter points out with particularity those cases in which the city may fix rates and charges. What has been said in respect to the power to license, tax, and regulate, applies with equal force here. We are not cited to, nor have we found, any adjudicated case which will support the ordinance now under consideration under the present charter powers of the city of St. Louis.

The judgment in this case is, therefore, reversed. RAY, J., absent. The other judges concur.