Bradbury, J.
The plaintiff in error, a railroad corporation, was operating a line of railway within this state, part of which la j within the incorporated village of Bowling Green, defendant in error. The village, deeming it necessary that a part of the railway track lying within its limits should be lighted, and there being then an electric light-plant in operation in said village, on December 21, 1891, passed the following ordinance:
ORDINANCE.
“An ordinance to provide for the lighting- of the track of The Cincinnati, Hamilton & Dayton Railroad Company, (operating the Bowling Green Railroad Company) within the corporate limits of the incorporated village of Bowling Green, Ohio.
“Section 1. Be it ordained by the council of the incorporated village of Bowling Green, Ohio, that The Cincinnati, Hamilton & Dayton Railroad Company, possessing' and operating a line of railway within the corporate limits of said village, be, and *338 it hereby is required — the same being deemed necessary by said council — to light a portion of its said railway within the corporate limits of said village, with electric lights by causing one electric lamp with the necessary attachments, similar in all respects to the' electric lamps and attachments now used in lighting the streets of said village of Bowling Green, Ohio, by erecting over said railway tracks within the limits of said village at each of the following places, to-wit: At the intersection of said track with the Ridge road, Adams street, Ordway avenue, Pearl street, West Wooster street, Wallace avenue, Morton avenue and the Brown road, and by lighting said lamps with electric lights as hereinafter provided.
“Section 2. The number of hours that said electric lights shall be required to be lighted during each period of twenty-four hours, shall be the same as the said council does now, or may hereafter, require for electric lamps within the limits of said village for lighting streets, to be lighted.
“Section 3. The work of lighting said parts of said railway shall be begun within twenty days after the date on which said company shall be notified of the passage of this ordinance, and the clerk of said village is hereby directed to cause notice to be given said railway company of the passage of this ordinance according to law, and in case said company shall fail to comply with the requirements of the same for a period of twenty days from the delivery of said notice, then said village of Bowling Green, Ohio, shall cause said lamps to be erected and said lighting to be done at the expense of said railway company, and the said railway company shall pay to the said village, the full costs thereof, which shall be a lien upon all the real estate and *339 leasehold interests of- said The Cincinnati, Hamilton & Dayton Railroad Company, situate or being within Wood county, Ohio.”
On January 9, 1892, notice of the adoption of the ordinance was duly given to the railroad company. The twenty days prescribed by the ordinance having elapsed, and the railroad company neglecting to comply with the provisions thereof, the village about the first of March, 1892, caused an electric lamp, of the kind prescribed to be placed at each of the five points specified by the ordinance, and thereafter, until the first of the ensuing September, maintained lights therein. The railroad company failing to pay the expense incurred in this behalf the village passed the following ordinance:
“AN ORDINANCE
To assess the costs of lighting The Cincinnati, Hamilton & Dayton Railway, upon the property thereof.
“Section 1. Be it ordained by the council of the incorporated village of Bowling- Green, Ohio, that the following cost and expense of lighting The Cincinnati, Hamilton & Dayton Railway, and incurred under the ordinance for that purpose, heretofore passed by this council, to-wit: Five are lights for the months of March, April, May, June, 1892, one hundred and thirty-two dollars and five ($132.05) cents ; be, and the same is hereby levied and assessed upon all the real property and leasehold interests of the Cincinnati, Hamilton & Dayton Railway Company, situated in the county of Wood, in the state of Ohio; and if the same be not paid within ten days from the date hereof, the city solicitor is hereby directed to cause the same to be *340 collected by an action brought for that purpose in a court of competent jurisdiction.
“Section 2. This ordinance shall take effect and be in force from and after its passage and legal publication. ”
The railroad company failing for more than ten days to pay the sum thus demanded, this action was begun in the court of common pleas to enforce its payment.
A number of defenses were interposed by the railway company, upon which the cause went to trial, no substantial dispute was had, however, over any fact which we deem necessary to establish a rig’ht of recovery in the villag-e. The evidence disclosed that the plaintiff in error, at the time the ordinance was passed, and ever since, operated a line of railroad that extended into the village; that the ordinance prescribing the lights was duly passed, and notice thereof duly given to the plain-, tiff in error. That it did not maintain the prescribed lights; that the same were, during the period for which recovery was sought, maintained by the village, that the village had not been reimbursed for the money expended in that behalf; and that the city solicitor had been authorized to sue for its recovery. The right of the village to a recovery rested upon the facts just recited, and was established whenever those facts were established, provided the villag-e had authority to require the railroad company to maintain the lights in question. The real defense was a denial of this authority.
The provisions of the statute upon which the village depends for its authority in the matter, read as follows:
“Section 2494. When it is deemed necessary by the council of any city or village to have any *341 bridge or railway, located in whole or in part* in such corporation, owned, possessed, or operated by any individual, company, association, or corporation, or any portion of the same, lighted, the council shall pass an ordinance for that purpose, requiring the individual, company, association, or corporation owning, possessing, or operating the same, to light such bridge or railway within a specified time.
‘ ‘ Section 2495. The ordinance shall specify the manner in which such bridge or railway shall be lighted, the number and style of lamp-posts, lights and fixtures, and the time such lights shall be kept burning- in each twenty-four hours.”
The railroad company contested the legality of the steps taken by the village upon a number of distinct grounds.
One of these grounds was, that it did not own the railway, which it was required to light. In this connection, it appeared that the railroad company, plaintiff in error, owned a line of railway extending from Cincinnati to Dayton, in this state, and had leased the Dayton and Michigan railroad, with which it connected at Dayton, and which extended northward from Dayton to Toledo, passing about five miles westward of the village of Bowling Green, and that a short line of railway had been built, which extended from a point on the latter railroad into the village of Bowling Green, defendant in error. The track which it was required to light, was part of this short line of railroad. Of this short line, it averred it was neither owner or lessee, and for that reason, denied the power of the village to charge it with the expense of maintaining the lights in question. This defense would be com píete if the statute — section 4994, supra — author *342 ized municipalities to charge this burden upon such railroad company, only, as owned, or had leased the railroad to be lighted. Ho we ver, the authority conferred by the statute is not thus limited, but extends to any company that may be operating the railroad. According to the terms of the statute— section 2494 — the village had no concern respecting the title of any one in, or to the railroad in question. It had power to charg’e whatever company it found operating the railroad without inquiry as to the character of its title, and this is what it did in the present instance. The ordinance states and the petition alleged, that the plaintiff in error was managing and operating the railroad in question, and this statement and allegation is nowhere disputed in the record. We hold, therefore, that by the statute — section 2494 — the village finding the plaintiff in error managing and operating a railroad within its limits, was authorized to charge it with the duty of maintaining these lights, though it neither owned, or had leased the railroad the track of which was to be lighted.
This section of the statutes (2494) was before this court in the case of Railroad Co. v. Sullivan, 32 Ohio St., 152, and was held to constitute a reasonable exercise of police power, and therefore constitutional.
The ordinance in question specifies the points at which lights are to be maintained, and prescribes the kind of light, and the lamps and attachments to be employed. Electricity must be used, and the lamps and attachments must be in all respects similar to those' used in lighting the streets of the village.
Plaintiff in error contends, that these provisions are unreasonable at the pde thiny riveit of the *343 power of determining’ the kind of light to be used, and of contracting’ on its own behalf; that the system of lamps and attachments which the ordinance prescribes are the subject of patents, and that the exclusive right to use them within the village, has been granted to the Bowling Green Electric Light & Power Company, and that, therefore, the plaintiff in error was put wholly within the power of such company by the ordinance, and will be compelled to pay whatever price the company chooses to establish or .charge, for the lights required.
As respects the objection to the ordinance on account of its specifying the kind of light to be used, the statute — section 2495, Revised Statutes — • among other provisions, requires the ordinance to “specify the manner in which such * * railway shall be lighted. ” * * * This language seems broad enough to authorize the municipality to prescribe the kind of light to be employed for that purpose, - — whether electricity, gas, or any other material or means that may be reasonably adapted to the purpose. The power of selecting the kind of light to be used, can be exercised, of course, only, where more than one kind is available. This power must reside somewhere, either in the railroad company or the municipality. The power to require the lighting of a railroad track is a branch of the police power of the state. If the terms of this section (2495) of the Revised Statutes, grant-ting the power to municipal bodies should not' be broad enough to expressly authorize them to prescribe the kind of light to be employed, yet, as the power to compel a railroad company to light its track at all, implies authority to require it to be efficiently done, it would seem to necessarily *344 follow, that, within reasonable limits, the power to prescribe the kind, of lights rests with the municipal authorities. They, of course, in this respect, could not cast an unreasonable burden on the rail, road company.
Doubtless, an ordinance would cast upon a railroad company an unreasonable burden, and for that reason, would be void, if it prescribed an electric light, when the municipality contained no electric plant or other convenient means of generating electricity; otherwise, each municipality, large or small, through which a railroad mig’ht pass, could compel those who operate the road to erect a plant to generate the light thus required.
There was, however, in. the village of Bowling Green, at the time the ordinance under consideration was passed, an electric light and power company, operating- an electric plant, and therefore, the means was at hand that would enable the railroad company to comply with requirements of the ordinance in this respect, and, therefore, such requirement was not in itself unreasonable.
Did the ordinance unreasonably limit the right of the railroad company to. contract on its own behalf, or unreasonably place it with the power, and subject it to extortion at the ■ hands of the electric light and power company, of which it must procure the lights ?
True, the railroad was required to adopt electricity as the means of illumination, and was confined to the kind of lamps and their attachment, then in use in said village. If the exclusive right to use within the village, these lamps and attachments had been granted by the patentee to the Bowling Green Electric Light & Power Company, and if this company had an absolute power to fix the *345 price that it could exact for the use of its light and lamps, then the contention of the railroad company would find strong support in reason and justice. It may be conceded, however, that the lamps, and their attachments, as well as the system of lighting in use in the village of Bowling Green, were all protected by patents, and that the Bowling Green Electric Light & Power Co., had the exclusive right to their use within that village, and yet, the power of extortion would not follow, necessarily.
The light and power company, have acquired in the village, rights that are in the nature of a monopoly. The use to which it has devoted its property, is one in which the public have an interest, and it requires the use of the streets and alleys of the village to conduct and distribute electricity to its lamps for illuminating purposes ; and in addition to this, power to appropriate private property has been conferred on it. Section 3471, Revised Statutes. Both reason and authority deny to a corporation clothed with such rights and powers, and bearing-such relation to the public, the power to arbitrarily fix the price at which it will furnish light to those who desire to use it. Beach on Corporations, section 834, 835, 836; Zanesville v. Gas Light Co., 47 Ohio St., 1; Munn v. Illinois, 94 U. S., 113; Spring Valley Water Works v. Schottler et al., 110 U. S., 347; Gibbs v. Baltimore Gas Co., 130 U. S., 408; The City of St. Louis v. The Bell Telephone Co., 96 Mo., 623; Nebraska v. The Nebraska Telephone Co., 17 Nebr., 126; Central Union Telephone Co. v. Bradbury, 106 Ind., 1.
The Bowling Green Electric Light & Power Company was bound to serve all of its patrons alike ; it could impose on the plaintiff in error no greater charge than it exacted of others who had *346 used its lights. The village had authority to fix the rates to be charged by the company for lights. Section 2478, Revised Statutes. If the village authorities should fail to act in this respect, and the plaintiff in error and the power and light company, could not agree upon a price, the latter, by an appeal to the courts of the state, could compel the former to furnish the lights at a reasonable price.
Therefore, the provisions of the ordinance requiring- the plaintiff in error to use the lamps and attachments then in use in the village, was not unreasonable. Notwithstanding that the sole right to use the lamps and attachments prescribed, may have been vested in the Bowling- Green Electric Light & Power Co., yet, as that company was bound to furnish light to all its patrons on terms that must be both reasonable and impartial, the ordinance requiring the use of such lamps and attachments, should, in that respect be deemed reasonable. The right to make contracts on its own behalf, is doubtless a valuable one to the plaintiff in error, and if there had been two or more electric light plants in the village, an attempt, to dictate to plaintiff in error which of them it should choose, might have presented an interesting question. There was but one, however, and the only choice open to plaintiff in error, was between building a new plant or taking light of the company then established in the village; If that company had an exclusive right to use the lamps and attachments prescribed, then no choice was open to the plaintiff in error, and it would be compelled to procure the lights of that company. This, however, from a practical point of view, was of little or no concern, because, while the circumstances surrounding the *347 plaintiff in error compelled it to take the lights of this particular company, yet, the latter was also compelled to furnish them at a reasonable price. The state, under these circumstances, must yield its police power, a power existing for the benefit of all its citizens, or the right of a railroad company to an unlimited power of contracting must give way. This is not the only instance in which its powers in this respect are curtailed for the public good. This is notably the case in respect of its power to contract concerning the transportation of freight and passengers.
The ordinance in question requires the lights to be furnished by the plaintiff in error, shall be kept lighted during the same hours that the street lamps of the village may be kept lighted; this' we think is sufficiently definite to clearly inform the plaintiff in error of what was required of it in this respect.
The ordinance, we think, imposes no unreasonable burdens on the plaintiff in error.
Judgment affirmed.