Spear, O. J.
The pleadings and findings of fact present this question: Had the Village power, by deed of purchase, to legally acquire title to and hold real estate for the sole purpose and with the sole intent of donating the same to procure the construction and operation of manufacturing plants within its limits?
*438 Two sections of the constitution seem to bear upon the subject. One, section 6 of article 13, makes it the duty of the general assembly, in providing for the organization of municipalities, to restrict their power of contracting debts, and loaning their credit, so as to prevent the abuse of such power. The other, section 6 of article 8, expressly denies to the assembly power to authorize any such corporation to become a stockholder in any joint stock company, corporation or association whatever; or to raise money for, or loan its credit to, or in aid of, any such company, corporation or association. And that this interdict applies as well to the case of an individual, as to the aggregations named, is without question. It is intended to prevent the union of public and private capital in any enterprise whatever.
In considering the attitude of the Village in this controversy, we must look at the entire scheme that was proposed to be accomplished. The first step was to pay out money of the municipality in the purchase of land. The next was a donation of the land so acquired to some one willing to contract, and that person, in turn,, to construct and operate the manufacturing plants for the supposed benefit of the people. The Village was not to share as a partner in the enterprise, nor to loan its credit for that purpose, nor did it do so; but it did propose, by the wrongful use of corporate funds, to make a purchase, intending thereafter to make a gift of the property so to be acquired, both of which things it undertook to do. It cannot be doubted that the scheme taken as a whole was clearly violative of the spirit of the sections of the constitution cited. And, notwithstanding this, the proposition of the Village is that a court of *439 equity should aid it in recovering that which it has undertaken to acquire by a scheme forbidden by law, and has parted with in compliance with a contract which it had no power to make.
It is to be borne in mind that we are dealing with the status and capacity, not of a natural person, but of a corporate one, a mere creature of the law, an artificial entity which, having no natural rights or powers, exists and operates only by virtue of the law of its creation. And we suppose it to be settled that our municipalities have such capacities and powers, and such only, as are expressly granted, and such as may be implied as essential to carry into effect those which are expressly granted, and that doubtful claims to power are resolved against the corporation. Cooley’s Con. Lim-, 231, 232; Minturn v. Larue, 23 U. S., 435; St. Louis v. Bell Telephone Co., 96 Mo., 623; I Dillon’s Mun. Corp., sections 89, 457; 2 Dillon’s Mun. Corp., section 936; Ravenna v. Penna. Co., 45 Ohio St., 118. So that, the question resolves itself into this: Has the power been clearly granted to villages to accept title to land for the express purpose of donating it for the encouragement of local improvements? If not, is such power to be implied as essential to carry into effect other clearly granted powers?
The right of a municipality to acquire property, is given by paragraph 33 of section 1692, Revised Statutes, in these words: “To acquire by purchase, or otherwise, and to hold real estate, or any interest therein, * * * for the use Qf the corporation, and to sell or lease the same.” Here is specific mention of the purpose for which land may be acquired. The controlling idea is that the property must be for the use of the corporation. *440 This idea of use implies power to hold; it implies, beyond this, a jus disponendi, a power to deal with the property. If such power does not exist, then its attempted acquisition would be an idle performance. The two ideas are inseparable; if the municipality is without power to hold and dispose of the property, then, by the same token, it is without power to acquire. And we are necessarily confined, in treating- of the purpose of acquisition, to the express purpose, viz: ‘ ‘The use of the corporation,” for, applying the maxim, expressio unius est exclusio alte?‘ius, all other purposes are excluded. It would follow, therefore, that if the land be for the use of the municipality, for some legitimate corporate purpose, then power is given by the clause quoted to acquire it, and necessarily power to hold and dispose of it. But if it be not for the use of the corporation, that is, for a use to which the corporation may lawfully devote it, then this clause gives no capacity to receive or power to hold. Another paragraph of the same section gives power to accept bequests, but that is not involved here, and so far as we are aware, there is no general power given to acquire real estate except by the paragraph quoted. Not only, therefore, is there no clear expression of a purpose to give power to acquire and hold real estate for speculative purposes, but the provisions upon the subject, statutory and constitutional, clearly establish that no such power is intended. The chief function of a municipality being to regulate local governmental affairs because they may be dealt with better by the people interested than by a distant central power, we cannot assume a purpose to invest such corporation with the powers or capacities of individuals, or of private corpora *441 tions, for objects not pertaining to municipal rule, since that would be to pervert the institution from its legitimate ends, and to require of it duties which it is not adapted satisfactorily to execute, and which are not necessary to enable it to discharge the appropriate functions and duties of local administration. It follows that no such power is to be implied as essential to carry into effect the power which is in terms given.
If we are right in these conclusions, then it results that the attempted purchase by the Village of the Lechner heirs, gave to the municipality no title to the land, either legal or equitable.
This being the situation, how does it leave the parties? Markley is in possession. The attempted deed of the Village gave him no title, but, on the other hand, the Village has no title to be restored. It cannot prevail except through the medium and with the aid of the illegal transaction to which it was a party, and hence it can have no standing in a court of equity because it asks affirmative relief under circumstances showing that it is itself in the wrong. The defendant is equally in pari delicto. The court will, therefore, refuse aid to either, but leave them where, by their illegal acts, they have placed themseLves. Thomas v. Cronise, 16 Ohio Rep., 54; The State v. Buttles, 3 Ohio St., 309; Commissioners v. Andrews, 18 Ohio St., 49; Board of Education v. Thompson, 33 Ohio St., 321; Kahn v. Walton, 46 Ohio St., 195.
It is insisted that Markley, having taken a deed from the Village, is estopped to deny the title of his grantor. But Markley does not attempt to stand on that title. He distinctly repudiates it. But if he did, the contract which the plaintiff itself *442 pleads, and the finding of the circuit court, disclose fully the illegal character of the transaction.
Attention is called to section 21, Revised Statutes, and the proposition is advanced that the attempt of the Village to convey to Marldey maj be treated as an illegal loan or deposit of the property of the Village, which, by this section, it is authorized to recover back. The section cannot apply. We have already found that the land in question was not the property of the Village. The spirit, if not the letter, of this statute was violated by the act of the municipal officers in unlawfully paying the money of the Village to the Lechner heirs, not in their futile attempt to convey what the Village did not own.
The case of the Village seems to rest upon the proposition that the municipality, while it is not bound by the illegal acts of its officers, nevertheless may affirm in part what they did, and thus reap whatever benefit may result from their acts. The proposition is not tenable. Its weakness lies in the unfounded assumption that the illegality of the transaction consists wholly in the unauthorized acts of the agents. We have already found that the scheme could have no legal basis because of the inherent incapacity of the municipality to enter into it.
But it is insisted that to deny the relief sought by the Village would be to put it in the power of village authorities to make wrongful use of corporate funds, and then refuse relief to the wronged corporation. We think not; at least not necessarily so. If the vendors, at the time of the attempted conveyance to the Village, and the receipt by them of the alleged purchase money, were aware of the purpose of the village authorities in their attempt *443 to acquire the property, no reason is perceived why an action may not he maintained to recover of them the money thus illegally appropriated, and failing that remedy, it is not impossible that the village officers who thus undertook to make unauthorized use of the village funds, may be liable. Of course, however, we do not undertake to decide these questions. They are not involved in this controversy, nor are the proper parties before us.
Judgment of the circuit court reversed and petition below dismissed.

Beversed.