UNION ELECTRIC LIGHT AND POWER COM-
PANY v. CITY OF ST. LOUIS, Appellant.

**In Banc, December 24, 1913.**

**ABROGATION OF ORDINANCE: Repeal of Statute Upon Which
Founded: Regulating Price of Electricity.** The Act of 1907
(Secs. 9568-9570, R. S. 1909), granting power and authority to
cities, by ordinance, to fix the rates of charges for the use
of electricity, was expressly repealed by the Public Service
Commission Act of 1913, Laws 1913, p. 651, sec. 139; and hence
there was repealed along with it an ordinance of the city
of St. Louis enacted in pursuance to and based upon the Act
of 1907, attempting to fix the price of electric current and
regulate the uses and charges therefor. And hence an appeal
by the city from a judgment rendered in the circuit court
before the enactment of the Act of 1913, holding that the
Act of 1913 did not authorize the city to enact the ordinance
prescribing a maximum rate of nine and one-half cents per
kilowatt for the service of electric current, is dismissed.

Appeal from St. Louis City Circuit Court.—*Hon.
Charles Claflin Allen,* Judge.

APPEAL DISMISSED.

*Lambert E. Walther, William E. Baird* and *Tru-
man P. Young* for appellant.

(1) It is a well-settled principle of equity juris-
prudence that when a court of equity has once obtained
jurisdiction of a cause it will retain jurisdiction until
the controversy is entirely disposed of. Railroad v.
United States, 133 Fed. 657. This principle has been
illustrated in numerous decisions. For example:
Wherever a suit has been brought to enjoin infringe-
ment of a patent, the court will retain jurisdiction, not-
withstanding the expiration of the life of letters pat-
ent, for the purpose of rendering all proper relief, such
as accounting, etc. Bush v. Jones, 184 U. S. 598; Sugar
Co. v. Sugar Co., 21 Fed. 878; Singer Co. v. Machine

Co., 38 Fed. 586; Chinnock v. Telephone Co., 110 Fed. 199; Brooks v. Miller, 28 Fed. 617; U. S. Co. v. Spring Co., 122 Fed. 266. It is also well established that a court of equity which has obtained jurisdiction of a cause will proceed to enter all possible relief, relief which might be obtained both at equity and at law. Obear v. Gallagher, 93 U. S. 199; Ward v. Todd, 103 U. S. 329; Peck v. Tie Co., 116 Fed. 273; People v. Chicago, 53 Ill. 424; Peoria v. Johnson, 56 Ill. 45; Spears v. New York, 87 N. Y. 376; Dulaney v. Scudder, 94 Fed. 6; Patterson v. Asphalt Pav. Co., 94 Minn. 39; Lynch v. Railroad, 129 N. Y. 280; Whitehead v. Sweet, 126 Cal. 75. But the respondent argues that, though it has obtained an injunction from the lower court to prevent the city from enforcing ordinance 25812, and though that decree will remain in force unless this court interferes, nevertheless the controversy has been reduced to a mere moot question, because of the repeal of the Cooper Enabling Act, secs. 9568 and 9570, R. S. 1909. Now, it will be noticed that the city has not repealed the ordinance. We are not here confronted with a case where the plaintiff has obtained an injunction to prohibit the enforcement of an ordinance which the city has subsequently repealed. The ordinance remains in full force and effect unless the repeal of the Cooper Enabling Act has amounted to a repeal of the ordinance. This alone is a question of law which is of sufficient importance to justify a hearing upon the merits of the case, and should not be disposed of on a motion to dismiss. The question of the power of the city to pass the ordinance, under its charter, as distinct from the powers granted by the Cooper Enabling Act, and the question of the validity of the ordinance, notwithstanding the repeal of that act, is fairly presented by the record. The repeal of the Cooper Act did not reduce this litigation to a moot case. So long as there are any questions which remain undecided, and the

decision of which may result in a decree affecting the substantial rights of the parties, the case is not a moot one. It is not material that some of the questions presented may have lost vitality, either by lapse of time or by a change of the law. If any questions presented are still live questions, if the court can enter a decree affecting the substantial rights of the parties, the case cannot be regarded as a moot case. And this is especially true where the lower court has entered a perpetual injunction.

*H. S. Priest, John H. Drabelle* and *Schnurmacher & Rassieur* for respondent.

The general rule of law is that rights dependent on a statute and still inchoate, not perfected by final judgment or reduced to possession, are lost by repeal or expiration of the statute. The ordinance, assailed by this proceeding, established a maximum rate and prescribed certain regulations to be followed by electric light and power companies. As to the respondent, this ordinance never went into effect, because of the decree and permanent injunction of the court below. No rights can now be predicated upon the ordinance, because of the repeal of the law upon which its validity rests, without any saving clause in the repealing act. Sutherland on Statutory Construction, sec. 163; Yeaton v. United States, 5 Cranch (U. S.), 281; Schooner Rachael v. United States, 6 Cranch, 329; Endlich on the Interpretation of Statutes, sec. 478; Kaime v. Harty, 4 Mo. App. 357. In the case at bar the plaintiff sued to enjoin the enforcement of the ordinance. The decree of the lower court was to that effect. The city appealed; but since its appeal was taken the ordinance under which it was threatening to proceed has been repealed by the General Assembly. The ordinance had as its sole support Secs. 9568, 9569 and 9570, R. S. 1909, commonly known as the Cooper Act. Without these sections the city possessed no power to legislate

on the subject of rates. The General Assembly, which granted the power, had the right to withdraw it, and having withdrawn it, the city is again without authority; the foundation on which the ordinance rested having been removed, the ordinance has fallen away and has been in law repealed. Illinois & Michigan Canal v. Chicago, 14 Ill. 334; Railroad v. Railroad, 102 Mass. 386; Surtees v. Ellison, 9 B. & C. 750. Even if the Public Utilities Act had not in express terms repealed sections 9568, 9569 and 9570, the ordinance under which the city was threatening to proceed, when enjoined, would still be unenforcible at this time for another and further reason, and that is, because the Public Utilities Act has now vested the Public Service Commission with exclusive power and authority to fix rates and to regulate corporations of the character of respondent. Where a statute of the State and an ordinance of a municipality conflict, the ordinance becomes invalid. City of St. Louis v. Wortman, 213 Mo. 131; Kansas City v. Clark, 68 Mo. 588; Hicks v. St. Louis, 234 Mo. 647.

## STATEMENT.

The Legislature of this State in 1907 passed an act approved by the Governor May 8, 1907, which required the owners or operators of certain public utilities under franchises granted by the State or any of its cities, to conform their charges for service of utilities to the amount "fixed" by the ordinances in the respective cities where they were conducted. The words of the act granting this power to the cities are as follows:

" . . . are hereby granted power and authority to fix, by ordinance, the rates of charge for the service of such utilities within their corporate limits, and to provide and enforce fines and penalties for the violation thereof, and to change such rates, by ordinance, from time to time, as often as may be deemed necessary; *provided*, however, that such rates must be rea-

sonable, and shall not be changed oftener than once every two years." [Laws 1907, p. 120.]

The act also afforded a right of attack in the circuit court within twenty days after the passage of such ordinance to test its validity and the reasonableness of such rates with a further right of appeal by either party as in other cases. The act further provided that any such city or town might create a commission to investigate all facts and matters touching the establishing of a just and reasonable rate of charge and report its findings and recommendations to the city council. The provisions of this act were carried into the Revised Statutes of 1909, where they now appear as sections 9568-69-70.

In pursuance of the above delegation of authority, the city of St. Louis, by ordinance 24196 approved February 24, 1909, created a Public Service Commission and upon a report from that body bearing on the business and property and rates charged by the Union Electric Light & Power Company, adopted a further ordinance which is No. 25812, approved April 12, 1911. [Rombauer's Revised Code of St. Louis (1912), chap. 37.] This ordinance by its terms went into effect six months after its approval. Section one of said ordinance prescribed a maximum rate of nine and one-half cents per kilowatt hour for the services of electric current. Said ordinance by section three provided that all owners or proprietors engaged in supplying electric current "shall be subject and bound by the following regulations." It then provided that such persons shall furnish to the consumer of electric current meters free of cost, and under certain circumstances to supply them lamp renewals upon the return of burnt out lamps, and forbade them to contract with consumers not to use other means than electricity for light or power, or to require any consumer to contract for a longer period of service than one month, and prohibited them from charging any rental for service connection

or meters, or to require the customer to agree to use a fixed amount of electric current, or to pay any fixed sum for services rendered him, prohibited them from requiring any customer to make a deposit to secure payment of services in excess of two months' average business, and requiring them to pay interest at five per cent per annum on all deposits, and requiring them to furnish free service connections to the extent of one hundred feet from the street to the inside walls of the premises of such consumer.

Immediately after the passage of this ordinance, to-wit, April 28, 1911, the Union Electric Light & Power company, a corporation engaged in the city of St. Louis in the business of furnishing and selling electricity for lighting, heating and power, brought this suit, praying that said ordinance, setting it out *in haec verba,* be declared unconstitutional and void as to said plaintiff and that its enforcement be perpetually enjoined.

The grounds upon which the ordinance was sought to be annulled were: That its enactment by the city was in *excess* of the power delegated to it by the act of the Legislature of Missouri (R. S. 1909, secs. 9568-69-70) in that the only power purported to be given to the city by the terms of said act of the Legislature, was the power "to fix, by ordinance, the rates of charge for the services of such utilities within their corporate limits," and that from these words the city could not exercise the broader power of establishing a maximum rate and regulating the business of complainant as it had attempted to do by the ordinance in question; that said ordinance was unreasonable and confiscatory, and attempted to impair the right of contract and the freedom of contract guaranteed to plaintiff by the Constitution of Missouri, section 4, article 2.

The defendant city filed its amended answer admitting that plaintiff is engaged in the city of St. Louis in the business stated in its petition; admitting the pas-

sage by defendant of the ordinance referred to in the petition, and that it was correctly copied therein, and admitting further that "unless restrained by this or other court of competent jurisdiction it will proceed to enforce the ordinance against the plaintiff." Defendant further answered denying that the maximum rate of charge for electricity established by said ordinance is unreasonable as concerns the business of plaintiff, denying that if enforced it would require plaintiff to furnish electric current for a sum which will not yield a fair and reasonable return upon the cost and value of its property, and denying that said ordinance is therefore unreasonable, oppressive or confiscatory.

Upon the filing of said answer plaintiff filed a written motion for judgment upon said answer on the ground of the admission in the answer as to the passage of the ordinance and the purpose of the city to enforce it against the plaintiff. Said motion for judgment concludes, to-wit:

"Whereupon this plaintiff states that defendant by said answer admits that it has passed, and upon the filing of the petition herein threatened, and now still threatens to enforce said ordinance, under an act of the General Assembly authorizing it merely to fix, but not to regulate the rates which may be charged by this plaintiff. And plaintiff states that it thus appears by the admissions of defendant that the ordinance aforesaid, the enforcement of which is sought by this plaintiff to be restrained, is null, void and of no effect, because, among other grounds assigned in its petition, it does not come within the exercise of the power conferred upon defendant by said act of the General Assembly.

"Wherefore plaintiff now moves the court for a judgment and decree upon said answer, as is prayed by it in its petition."

Upon the consideration of this motion the court on the 12th of February, 1912, entered a decree sustaining

the prayer for judgment and perpetually enjoining the enforcement of said ordinance against plaintiff. After the overruling of a motion for new trial defendant appealed to this court.

During the pendency of said appeal the respondent filed in this court a motion to dismiss the appeal for the reason that since it was taken, the General Assembly had passed an act known as the "Public Service Commission Act," creating such a commission and defining its powers and duties and investing it with full regulation and control of public service corporations like the plaintiff, and expressly repealing, in terms, sections 9568-69-70 of the Revised Statutes of 1909, in pursuance of which sections the ordinance sought to be enjoined had been enacted by the city of St. Louis. Said motion concludes, to-wit: "That by reason of the repeal of the said sections of the Revised Statutes of 1909 aforesaid, all power or right of the city of St. Louis to fix the price of electric current has been repealed, so that said city of St. Louis no longer has such power; and therefore the appeal in this case presents now merely a moot or academic question."

In support of this motion and in opposition thereto, the parties have filed printed briefs in addition to those filed theretofore, and have stipulated for the submission of the case on said briefs.

## OPINION.

### I.

BOND, J. (After stating the facts as above).—On the motion of respondent to dismiss this appeal only one question is presented. Was the ordinance No. 25812, which purported to establish a maximum rate of charge for electrical service and provide other regulations which should govern the plaintiff in the conduct of its business, repealed when the Act of 1907 (R. S.

1909, secs. 9568-69-70) was expressly repealed by section 139 of the Public Service Commission Act passed by the Legislature of 1913? [Laws 1913, p. 651, sec. 139.]

This ordinance could only spring from one of two sources, i. e., the charter of the city, or the provisions of the grant of power to it contained in the Act of 1907. [R. S. 1909, secs. 9568-69-70.] Was it within the power vested in the city by its charter?

Charter
Power.

Appellant pleaded no such authority in its amended answer in this case, but that does not exclude it from review, for the charter of St. Louis is judicially known to all courts. [Constitution, art. 9, sec. 21.] In the brief for appellant our attention is directed, as authority for the ordinance derivable from the city charter, to the following language. "To license, tax and regulate . . . telegraph companies or corporations . . . and all other business, trades, avocations or professions whatever." [Charter of St. Louis, art. 3, sec. 26, cl. 5.]

This language of the charter of St. Louis was in judgment in this court where the point under review was the authority of the city of St. Louis by force of that language, to pass an ordinance prescribing that "the annual charge for the use of the telephone in the city of St. Louis shall not exceed fifty dollars." The telephone company was fined $300 for violating that ordinance and appealed to this court. It was contended that the ordinance could be sustained under the language of the charter above quoted. It was ruled that the language in question afforded no warrant for the enactment of the ordinance fixing the rate for telephone service; that such power resided in the State, but had not been delegated to the city of St. Louis under the provisions of its charter to which the attention of the court was then directed, nor under its power to regulate the streets, nor under that given to it by the "General Welfare Clause," and since such a power was

not necessarily or fairly implied in or incident to any power expressly granted to the city, it was not exercisable by it. [City of St. Louis v. Bell Telephone Co., 96 Mo. 623.] The case cited has been a leading authority in this State since it was ruled, and is conclusive from a charter standpoint, as to the invalidity of the ordinance under review in so far as it attempted to establish a maximum rate of charge for the service of electric current. Indeed that is conceded in the brief of the learned counsel for the city, who insists, however, that the ordinance is sustainable as to those

**Regulatory Provisions.** clauses and provisions which are termed "regulatory," since these merely protect the public against any "improper or harmful manner in which the service might have been rendered," and hence are within proper exercise of the police power of the city.

We cannot assent to that view. An analysis of the various regulations contained in the ordinance discloses that each and all of them relate to the question of the price at which the plaintiff might sell its electric current and do not touch even remotely, upon the health, morals and welfare of the public, or the conservation of its property, or upon any subject falling within the just protection of the police power of the city. Take for instance the requirement of free meters; that was evidently designed to bring within the maximum rate all expense attendant upon securing the service of electricity. In other words it was the intention of the framers of the ordinance, that all meter cost should be absorbed in the amount prescribed in the maximum rate of charge. That regulation bore no possible relation to any matter lying within the just domain of the police power. The same may be said to the regulation as to lamp renewals without cost to the consumer.

The other regulations related to restrictions upon the power of plaintiff to make contracts with its con-

sumers for the purpose of securing the payment of its charges, such regulations are not only outside of the police power, but they are in contravention of the Constitution which guarantees to the citizens the right of freedom of contract as to any lawful subject-matter.

Our conclusion is that the regulations inserted in this ordinance were only intended to prevent the avoidance, in any way, of the maximum rate of charge prescribed, and were inserted in the ordinance, not for police purposes, but to insure that none of the appliances for the service of electric current should carry its cost to the users above nine and one-half cents per kilowatt hour. As the city had no power under its charter to fix any rate of charge for the use of electricity; it necessarily was without charter power to *affect* the price at which it was sold to the public by regulatory provisions contrived solely to that end, for that would be *pro tanto* a fixing of the price, and this, as has been seen, it had no charter power to do. The result is, that the ordinance under review cannot be sustained as a valid exercise of any powers expressly or incidentally granted in the charter of St. Louis.

## II.

Was the ordinance in question enacted within the scope of the powers delegated to the city of St. Louis by the act of the Legislature of 1907? [R. S. 1909, secs. 9568-69-70.]

The act of the Legislature approved March 17, 1913, known as the Public Service Commission Act,

**Repeal of Statute: Ipso Facto Repeal of Ordinance.** relieves us from an answer to that inquiry. That act, among other things, in express terms repealed the three sections of the Revision of 1909 in which the original act of 1907 was bodily incorporated. [Laws 1913, p. 651, sec. 139.] The effect of this specific repeal of the sections of the Revised Statutes necessarily repealed any ordinance which the city of St. Louis might have

enacted in pursuance of the power devolved upon it by the repealed sections of the statute. This exact point was before this court in a recent case, where the court held in judgment whether an ordinance of the city of St. Louis was repealed by a repugnant act of the Legislature subsequently enacted.

The defendant in that case was charged with the violation of the ordinance prior to the statute. Despite that fact, this court speaking through WOODSON, J., held that the defendant was properly discharged, adding; "For the reason that the law is well settled in this State that the repeal of an ordinance pending a prosecution under its provisions operates to relieve the defendant unless it is otherwise provided in the act repealing the ordinance," [St. Louis v. Wortman, 213 Mo. l. c. 147-8; City of Kansas v. Clark, 68 Mo. 588.]

The present case is stronger, if possible, than the one just cited, for here the section of the statute upon which the ordinances of the city of St. Louis was necessarily founded, were expressly and in terms repealed by the later act.

We therefore hold that the present appeal being resolved into an effort to reverse a judgment which enjoined as to this respondent an abrogated ordinance, presents no question for review by us and the appeal taken herein is accordingly dismissed. *Lamm, C. J., Graves, Brown, Walker* and *Woodson, JJ.,* concur in result and in paragraph two, in an opinion by *Graves, J; Faris, J.,* concurs in result.

## SEPARATE CONCURRING OPINION.

GRAVES, J.—I concur fully in what is said in paragraph two of the opinion of our Brother BOND, and in the result reached in the case. What is said in
*Obiter.* paragraph two of the opinion fully disposes of the case, and renders what is said in paragraph one in a sense *obiter*—not strictly *obiter,* because it could well

be written under the issues involved, but *obiter* in the sense that after reaching the conclusion reached in paragraph two the case was finally disposed of, and there was no necessity for further utterance. The opinion may be right or wrong upon the questions discussed in paragraph one (matters upon which we express no opinion at all), but when we touch one question therein suggested, we are in contact with a very ''live wire,'' and ought to approach it with hesitancy, and then only in a case where the question is *the* question in the case. I refer to restrictions in State laws or ordinances which tend to do away with the terms of existing contracts on the theory that the police power of the State cannot be contracted away. The trend of recent legislation is such that this question is going to become the turning point in some case in the very near future, and for that reason I prefer to express no opinion thereon at this time, but await a time when it can be considered upon full argument in the light of modern statutes and some more recent cases. For these reasons I concur only in paragraph two of the opinion, and in the result. *Lamm, C. J., Woodson, Brown* and *Walker, JJ., concur* in these views.