THE STATE ex rel. ST. LOUIS TRANSFER COMPANY, Appellant, v. PATRICK J. CLIFFORD, License Collector.

### Division Two, May 26, 1910.

1. **EVIDENCE CONTRADICTORY OF SENSES: Wagon Tires.** Testimony which contradicts and contests the evidence of the senses should be received with caution. It is contrary to common experience that wagon tires do not normally travel on the full face thereof, but only on their outer edge; and courts will not be visionless. And on appeal, though a majority of witnesses have testified that wagon tires normally travel on their outer edges, that will not be held to have been established as a fact.

2. **WIDE WAGON TIRES: Injury to Streets.** An ordinance requiring wagons to have wide tires will not be held to be unreasonable on the theory that they result in a positive injury to streets.

3. ———: ———: **Reasonableness.** Where the reasonableness of a municipal ordinance is in issue, all reasonable doubts are resolved in favor of the municipality. An ordinance requiring wagons, having axles of a specified diameter, to have tires of not less than a specified width, is not unreasonable, and will not be declared invalid on the theory that it is unreasonable and oppressive and works a hardship on a transfer company.

4. ———: **Invalid Ordinance: Heavy Transportation: All Vehicles: Separable Parts.** But where the charter gives the city the right to regulate by ordinance "the width of the tires of all vehicles for heavy transportation," an ordinance which embraces vehicles of every kind and description, whether for light or heavy transportation, and requires the width of tires of all vehicles to conform to a fixed schedule for width of tires, is invalid. And as the proviso in which this invalid part of the ordinance is found is inseparably connected with the rest of the section and has a general influence over it, it cannot be held to be a valid regulation of the width of tires of wagons used in heavy transportation, and the whole section is invalid.

5. ———: ———: ———: **Special and General Charter Provision: Exception.** And since the charter gives the municipal assembly power to regulate by ordinance "the width of tires of all vehicles for heavy transportation," an ordinance that applies to all vehicles alike cannot be upheld on the theory that this express power is merely a corollary of a general power (granted to the city by another paragraph of the same section of the charter) to improve the streets and regulate the use thereof. The special provision is an express grant of power for a certain purpose, and must be strictly construed, and the city's power of legislation is limited to the object specified, all others being excluded by implication. The rule is that where there are two charter provisions, one of which is special and particular and certainly includes the matter in question, and the other is general, and such that, if standing alone, it would include the same matter, and thus conflict with the special provision, the special must be taken as intended to constitute an exception to the general provision and to limit its application, and especially is this true when the two provisions are contemporaneous.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

REVERSED AND REMANDED (*with directions*).

State ex rel. v. Clifford.

*Randolph Laughlin* and *Lehmann & Lehmann* for appellant.

(1)  Where compliance has been made with the requirements specified by law for procuring a license, and the officer in whom authority is lodged refuses to issue the license, he may be compelled to do so by mandamus.  St. Louis v. Wetzel, 130 Mo. 620; Ex parte Lucas, 160 Mo. 227; State ex rel. v. Ruark, 30 Mo. App. 325.  (2) It was the respondent's duty to issue vehicle licenses to the appellant on demand, or to give appellant a statement that upon payment of the amount of the licenses the license receipts would be issued to it.  Laws 1901, p. 81, sec. 5.  (3) The proviso of section 1708 of the Municipal Code is void in that it conflicts with the fifth paragraph of section 26 of article 3 of the city charter.  Said section of said charter limits the power of the municipal assembly to the regulation of the width of tires of vehicles for heavy transportation.  The specific grant of power given by this paragraph of the charter is exclusive, and excludes the idea that any power to regulate the width of tires is to be found implied as an incident to any general grant.  St. Louis v. Kaime, 180 Mo. 317; City v. Telephone Co., 96 Mo. 628.  (4) The proviso of section 1708 of the revised ordinances attempts to regulate the width of tires of "all vehicles of every kind or description used on the streets of this city for any purpose whatever," having axles in excess of one and one-fourth inches in diameter, and not having rubber tires.  Either the assembly wholly lost sight of the limitation of the charter, or else this language is equivalent to a declaration that "A vehicle for heavy transportation is hereby declared and defined to be a vehicle having an axle of iron or steel one and one-fourth inches or more in diameter, and not having rubber tires, regardless of whether such axle be a solid bar or a hollow tube; regardless of whether such vehicle

be a child's velocipede, a man's bicycle, a racing sulky, or an ordinary buggy; regardless of whether the other parts of said vehicle have a capacity for sustaining ten pounds or ten tons; and regardless of whether said vehicle be in fact used for light, for medium, or for heavy transportation." (5) The words in the fifth paragraph of section 26 of article 3 of the city charter, which delegate to the mayor and assembly power "to regulate the width of tires of all vehicles for heavy transportation," must be construed in their plain or ordinary and usual sense. R. S. 1899, sec. 4160. (6) The void portion of the ordinance is so inseparably connected with the valid as to admit of no line of demarcation to be drawn by either court or jury. Therefore the whole ordinance must fail. Railroad v. Day, 35 Fed. 866; Andrew Jackson ex parte, 45 Ark. 158; McConnell v. Mayor, 39 N. J. L. 38; Water Co. v. Neosho, 136 Mo. 498; Manhattan Co. v. Dayton, 59 Fed. 327; Hannibal v. Telephone Co., 31 Mo. App. 23; Mt. Olive v. Haslet, 26 Pitts. L. J. (Pa. St.) 400; Austin v. Murray, 16 Pick. 121. (7) If there is "any fair, reasonable doubt concerning the existence of the power," the court will resolve the doubt in favor of the transfer company and against the city. City v. Telephone Co., 96 Mo. 628; City v. Kaime, 180 Mo. 309. (8) Under the evidence the ordinance is so grossly unreasonable as to justify and require the court to declare it void on that ground alone. State v. Rohart, 83 Minn. 261; Corrigan v. Gage, 68 Mo. 541; Halpin v. Campbell, 71 Mo. 484; Cape Girardeau v. Reilly, 72 Mo. 220; Kelly v. Meeks, 87 Mo. 396; Hannibal v. Telephone Co., 31 Mo. App. 23; Railroad v. Springfield, 85 Mo. 674; Plattsburg v. Hagenbush, 98 Mo. App. 669; Springfield v. Jacobs, 101 Mo. App. 339; Lamar v. Weidman, 57 Mo. App. 507; Gratiot v. Railroad, 116 Mo. 450; Morse v. Westport, 110 Mo. 502; Smith, Modern Law Mun. Corp., sec. 526; 1 Beach, Pub. Corp., secs. 90, 512 (9); Tugman v. Chicago, 78 Ill. 405; Cald-

well v. Alton, 33 Ill. 416; Austin v. Murray, 16 Pick. 121. (9) In so far as the ordinance proviso applies to those vehicles of the appellant which are engaged exclusively in interstate commerce, it is an invasion of the exclusive power of Congress. U. S. Constitution, art. I, sec. 8; Leisy v. Hardin, 135 U. S. 100; Schollenberger v. Pennsylvania, 171 U. S. 1; Collins v. New Hampshire, 171 U. S. 31; Austin v. Tennessee, 179 U. S. 343; Minnesota v. Barber, 133 U. S. 313; Henderson v. New York, 92 U. S. 259; Chy Lung v. Freeman, 92 U. S. 275; Railroad v. Huson, 95 U. S. 465; Scott v. Donald, 165 U. S. 58.

*Chas. W. Bates* and *B. H. Charles* for respondent.

FOX, J.—Relator applied to the circuit court of the city of St. Louis for a writ of mandamus to compel the license collector of said city to issue licenses for relator's wagons and other vehicles used by it on the streets of the city. The defendant had refused to issue the licenses applied for on the ground that relator failed to make certain statements and affidavits required by section 1708, chapter 23, article 2, of General Ordinance No. 19991, and because the tires upon relator's said vehicles were narrower than the width required by said section of the ordinance. Upon a trial of the cause, the peremptory writ was denied, and relator appealed to this court.

In its petition relator alleged that it was a Missouri corporation, engaged in carrying freight, passengers and baggage within the city of St. Louis, Missouri, and within East St. Louis, Illinois, and in carrying freight between said cities; that in its business it uses twenty-eight different kinds of vehicles, from "light baggage wagons, buggies, spring wagons and road carts, which haul and carry light loads, to heavy stake wagons, half spring wagons, long reach wagons, bulk grain wagons and other wagons, which are designed

to carry, and frequently do carry, heavy loads averaging in weight from four to ten tons;'' that certain other of its vehicles have rubber tires; that its wagons, road carts and passenger coaches have no rubber tires, and are so constructed as to make it impracticable to equip them with rubber tires; that the operation of all its vehicles, except passenger coaches and baggage wagons, is confined to the down-town streets of the two cities, which are for the most part paved with cobble stones and granite blocks; that the defendant was the duly qualified license collector of St. Louis.

Relator then sets out in full section 1708 of the Revised Ordinances of 1900, being a revision of Ordinance No. 18858, enacted in 1898.. This section provides for a license tax on all kinds of vehicles, graduated according to their character, and contains the provision ''that from and after the first day of January, eighteen hundred and ninety-nine. no vehicle of any kind or description shall be used on the streets of this city for any purpose whatever, unless all wheels of such vehicles shall be constructed with a width of tire corresponding to the size of the axle on the following scale, to-wit:

''Vehicles having axles of iron or steel, the wheels shall have width of tires as follows, to-wit: If the axle is of a width or thickness or diameter of one and one-fourth inches, the tires must be at least one and one-fourth inches wide; if the axle is of a width or thickness or diameter of one and one-half inches, the tires must be at least one and three-fourths inches wide; if the axle is of a width or thickness or diameter of one and five-eighth inches, the tires must be at least two inches wide; if the axle is of a width or thickness or diameter of one and three-fourths inches wide, the tire must be at least two and one-fourth inches wide; if the axle is of a width or thickness or diameter of one and seven-eighths inches, the tires must be at least two and one-half inches wide; if the axle is of a width or thickness

or diameter of two inches, the tires must be at least two and three-fourths inches wide; if the axle is of a width or thickness or diameter of two and one-eighth inches, the tires must be at least three inches wide; if the axle is of a width or thickness or diameter of two and one-fourth inches, the tires must be at least three and one-half inches wide; if the axle is of a width or thickness or diameter of two and one-half inches, the tires must be at least four inches wide; if the axle is of a width or thickness or diameter of two and three-fourths inches, the tires must be at least four and one-half inches wide; if the axle is of a width or thickness or diameter of three inches, the tires must be at least five inches wide; if the axle is of a width or thickness or diameter of three and one-half inches, the tires must be at least five and one-half inches wide; if the axle is of a width or thickness or diameter of four inches, the tires must be at least six inches wide.''

Then follows a scale for wooden axles, but this has no bearing upon the case at bar, and will be omitted.

Trucks used for hauling boilers, engines, safes or dimension stones are required by the ordinance to have tires at least six inches wide, and those for hauling cable rope, eight inches wide, such trucks to be constructed with axles of such lengths that the hind wheels should be at least eight inches further apart than the front wheels thereof. Drays are required to have tires at least four inches wide, and sprinkling carts six inches.

Then follows a provision that vehicles which should be made to conform with the ordinance, prior to January 1, 1899, should from the date of such compliance with the ordinance and until said first day of January, 1899, be exempt from the license tax, but that from and after January 1, 1899, all vehicles should be subject to the provisions of the section, and it was made unlawful, after said date, to use any vehicle on the streets of the city unless the tires thereof should con-

form to the requirements of said section. It was next provided that no license should be issued for any vehicle except upon the sworn statement of the applicant showing that the provisions of the ordinance in respect of width of tires had been complied with.

Relator next alleged that it applied to the defendant for license in the year 1905 for 132 two-horse wagons, fourteen carriages, two four-horse wagons, four one-horse wagons and seven buggies, and tendered the amount of license fees required, but that defendant refused to issue the licenses, assigning as his reason for such refusal that the relator did not accompany its application for such licenses with the sworn statement required by the ordinance showing the width or thickness or diameter of the axles, and width of tires, and the vehicles for which such licenses were to be used.

The relator further alleges that its vehicles had not for years been constructed with a width of tire corresponding to the size of the axle on the scale mentioned in the ordinance, and then set out in its petition a table of the various kinds of vehicles used by it whose tires did not comply with the ordinance, as follows:

| Description of Vehicle. | Size of Steel Axle | Width of Tire. Inch. | Weight of Wagon. Pounds. |
|---|---|---|---|
| Four-horse stake wagons | 3¼ | 4   (5) | 5,850 |
| Four-horse stake spring | 3½ | 4   (5½) | 6,225 |
| Two-horse four spring | 2¾ | 2½ (4½) | 5,000 |
| Two-horse half spring | 2¾ | 2½ (4½) | 4,700 |
| Two-horse high stake stiff | 2½ | 2½ (4) | 3,050 |
| Two-horse high stake spring | 2½ | 2½ (4) | 3,050 |
| Two-horse low stake spring | 2½ | 2½ (4) | 3,350 |
| Two-horse half spring | 2½ | 2½ (4) | 3,225 |
| Two-horse bulk grain | 2½ | 2½ (4) | 2,925 |
| Two-horse safe | 2¾-3¼ | 2½ (4½-5) | 5,100 |
| Two-horse long reach | 2½ | 2½ (4) | 2,000 |
| Four-horse long reach | 3¼ | 4   (5) | 3,340 |
| Two-horse light spring | 2 | 2   (2¾) | 2,000 |
| Two-horse heavy baggage | 2½ | 3   (4) | 4,100 |
| Two-horse light baggage | 1¾ | 2¼ (2¼) | 1,740 |
| One-horse baggage | 1¾ | 2 ⅛ (2¼) | 1,550 |
| Two-horse coaches | 1¾ | 2½ (2¼) | 2,670 |

The two columns under the heading "width of tire" represent first, the actual width of tires on relator's vehicles, and second (in the parentheses) the width of the tires required by the ordinance.

Relator next alleged that said section 1708 of the ordinance conflicts with the fifth paragraph of section 26 of article 3 of the charter of the city of St. Louis in that it attempts to regulate the width of tires for vehicles for light transportation and for medium transportation as well as for heavy transportation; that the parts of said section are so closely related as to be inseparable; that the section does not define the term "heavy transportation," and that it is impossible to determine what vehicles fall within its provisions.

Relator further alleges that the ordinance is unreasonable in that it would necessitate the getting of new wheels, new axles and in many cases necessitate an entire change in the trucks and in the construction of wagon beds; that it would necessitate a cost of many thousands of dollars, would seriously cripple and injure the business of the relator, and would result in no good whatever either to the city, the general public or to the streets. Then follows the allegation that it is the duty of the defendant to disregard the ordinance because of its unreasonableness, with the prayer for the writ.

In his return to the alternative writ the defendant admitted all the formal allegations of the petition, including the enactment of the ordinance, and that the relator was engaged in the business of carrying freight, passengers and baggage in the city of St. Louis, and that it owned the various classes of vehicles mentioned in the petition; alleged that the relator might lawfully operate all classes of its vehicles on any of the public highways of the city upon compliance with the ordinance provisions set out in the petition, and alleged that some of said highways are paved with brick, some with asphaltum, some with wooden blocks, some with

cold tar cement and granite, some with macadam, and some not paved at all; admitted the tender of the amount of license tax provided by the ordinance, but alleged that neither the relator, nor any one for it, made the application for licenses in due form; alleged that neither the relator, nor any one for it, accompanied said application with statements or affidavits, as required by the ordinance, but, on the contrary, refused to make said statements and affidavits; alleged that defendant refused to issue licenses or receipts because relator refused to make the affidavits, as required by the ordinance, and because the tires on its vehicles were narrower than the width of tires prescribed by the ordinance; admitted the relator's allegation that its tires were not constructed with the widths required by the ordinance, and alleged that it was unlawful for the defendant to issue licenses without compliance by the relator with said ordinance; alleged that defendant was anxious, ready and willing to issue licenses and tax receipts for relator's vehicles upon the relator's compliance with the ordinance, but that relator refused, and still refuses, to comply. Defendant denied all the other allegations in the petition, and prayed the court to quash the writ and dismiss the action.

The reply was a general denial of the return.

## OPINION.

The relator strongly insists that the proviso of said section 1708 of the ordinance in question is so unreasonable as to warrant this court in holding said section void on that ground. In support of this contention a great mass of testimony, mostly in the form of depositions, was introduced in the court below. Nearly all this testimony, introduced by the relator, appears to be directed to the establishment of its theory that a wagon wheel, whether having a wide or narrow tire, does not normally travel on the full face of the tire, but rather on the outer edge thereof, and that

therefore the ordinance as to wide tires does not serve its purpose, and is unreasonable. This theory is combated by quite a respectable crowd of witnesses for the defense, including experienced wagon-makers and teamsters, all of whom maintain that wheel tires do not roll on their outer edges alone; that when new the tire usually bears more heavily on its outer edge, but that this edge soon wears down, so that the whole face of the tire comes in contact with and bears upon the ground over which it rolls. We must confess that the theory advanced by the relator is to us a novel one, and the literature of the law sheds no light on the subject. Although there be more witnesses in support of than opposed to the theory, that fact does not move us, for it cannot be claimed that a numerical preponderance of witnesses should be decisive of the controversy. Courts will not be presumed to be visionless; and we have never yet seen any kind of wagon tire, rolling on the surface of ground soft enough to receive the impression, which did not leave its full imprint on the narrow strip of earth over which it had rolled. Theory should not outweigh practice and experience, and evidence which contests and contradicts the evidence of the senses must be received with caution.

It is further insisted by the relator that the ordinance would impose such intolerable hardships upon wagon-owners as to amount to confiscation of their property, and that the changes in the construction of wheels and tires required by the ordinance would result in positive injury, instead of benefit, to the city and its streets, and that it is therefore unreasonable and oppressive. After reading the evidence in support of this contention, we are still unconvinced. As said in People v. Wilson, 16 N. Y. Supp. 583, "It is reasonable to protect paved streets from being crushed and ruined by loads of enormous weight, borne upon vehicles with wheels of narrow tires, which cut through the pavement, when a broader tire will bear the load without

causing such injury. It is reasonable that the carrier of heavy loads should so exercise his own rights as not injuriously to affect those of others.''

The rule is that where the question of the reasonableness of a municipal ordinance is in issue, all reasonable doubts are to be resolved in favor of the municipality. ''When the courts are called upon to exercise the judicial power in declaring a municipal ordinance unreasonable, they will make such a declaration only when the prima-facie case made by the passage of the ordinance is overcome in the most satisfactory manner.'' [Morse v. Westport, 110 Mo. 1. c. 509; Stafford v. Railroad, 110 Wis. 331.]

The ordinance cannot be said to be discriminating, nor in derogation of common right, and neither upon its face, nor from proof *aliunde,* does it appear to us unreasonable.

But whether the particular provision of the ordinance regulating the width of vehicle tires is a valid and reasonable exercise of the power granted the city by the Legislature is another question. The fifth paragraph of section 26, article 3, of the charter of the city of St. Louis, empowers the municipal assembly to regulate by ordinance ''the width of the tires of all vehicles for heavy transportation.'' This is an express grant of power for a certain purpose, and must be strictly construed, for where a corporation is empowered by its charter to make ordinances for certain purposes, its power of legislation is limited to the objects specified, all others being excluded by implication. [St. Louis v. Kaime, 180 Mo. 309; New Orleans v. Philippi, 9 La. Ann. 44; Douglass v. Placerville, 18 Cal. 643; Leavenworth v. Norton, 1 Kan. 405; Kyle v. Malin, 8 Ind. 34.] The defendant, however, contends that this express power is merely a corollary of the general power granted to the corporation in another paragraph of the same section of the · charter to improve the streets, etc., and to regulate the use thereof, and that

the general power so granted is not limited by the special power as to the regulation of the width of tires of vehicles for heavy transportation. That contention does not consist with the rule of construction laid down in the case of Ruschenberg v. Railroad, 161 Mo. 70: "When there are two acts, or charter provisions, or ordinances, one of which is special and particular and certainly includes the matter in question, and the other general, and such that, if standing alone, it would include the same matter, and thus conflict with the special act, the special act must be taken as intended to constitute an exception to the general act, and especially is this the law when such general and special acts are contemporaneous." That rule is approved in the Kaime case, supra, wherein the court also said: "Even though it be conceded that the express grant of power . . . would not prohibit the exercise of the power under a general clause, yet such exercise of power cannot abrogate the limitations contained in the express grant. Hence, at last, we are relegated, as to the extent of power which can be legally exercised, to the express grant on the particular subject-matter to which the legislation is to be made applicable."

Comparing the ordinance with the charter provision on the subject of wide tires, it will be noticed that the ordinance nowhere uses the term "heavy transportation," nor makes any discrimination between vehicles for light and heavy transportation. The charter empowers the corporation to regulate the width of tires of *vehicles for heavy transportation* only, while the ordinance provision embraces vehicles of every kind and description, whether for light or heavy transportation. As the charter does not state what kind or character of vehicle should be regarded as a vehicle for heavy transportation, it is assumed that the Legislature intended that the matter should be left to the discretion of the Municipal Assembly. But there is no

way of determining from the words of the ordinance what constitutes a vehicle for heavy transportation. The ordinance simply requires all vehicles having axles of iron or steel of a thickness or diameter of one and one-fourth inches and over to have on their wheels tires of a certain width, corresponding to the size or thickness of the axle; and to say that the Municipal Assembly intended by that provision to declare that all such vehicles are vehicles for heavy transportation, would be an arbitrary and unwarranted assumption. We cannot read into the ordinance a thought which the framers thereof may have had, but did not express, nor can we give the words of the ordinance a strained and artificial meaning. The words of the charter are: "The mayor and assembly shall have power within the city . . . to regulate the width of tires of all vehicles for heavy transportation." Under the decisions of this court, this express provision must be held to be a limitation on the powers of the Municipal Assembly. By section 4160, Revised Statutes 1899, "words and phrases shall be taken in their plain or ordinary and usual sense," and it is quite plain that the words "vehicles for heavy transportation," as used in the charter, mean vehicles constructed or built for carrying or transporting heavy loads. Contrary to the provision of the charter limiting the power of the mayor and assembly to regulate the width of tires of vehicles of a certain class, or for a certain purpose, the mayor and assembly, by this ordinance, attempt to regulate the width of tires of vehicles "of every kind and description."

In St. Louis v. Bell Telephone Company, 96 Mo. 623, this court said: "Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." See also St. Louis v. Laughlin, 49 Mo. 562.

We are of opinion that the proviso of the ordinance in question is in excess of the power granted

the city by the charter provision on the subject-matter of the regulation of the width of tires of vehicles, in that it makes no discrimination as between vehicles for light and heavy transportation.

It is true that an ordinance may be valid in part and void in part, and that the valid part may be given effect, if what remains after the invalid part is eliminated contains the essential elements of a complete ordinance. Where, however, an ordinance is entire, each part having a general influence over the rest, and a particular provision thereof is void, the entire ordinance will be so declared. [Kirkwood v. Meramec Highlands Co., 94 Mo. App. 637; Attorney-General v. Lowell, 67 N. H. 198; Chicago v. Gunning System, 114 Ill. App. 377.] This we find to be the case here.

The proviso of said section 1708 of General Ordinance No. 19991 is undoubtedly void as being in excess of the charter grant of power, and the proviso having a general influence over the remaining portion of the section, and being inseparably connected therewith, the whole of said section must be declared invalid.

Relator also insists that the ordinance under review conflicts with section 8 of article I of the Constitution of the United States, in that, as contended, it is an invasion of the power of Congress to regulate interstate commerce, and that it also conflicts with section 1 of the Fourteenth Amendment to said Constitution. These questions were properly raised in the lower court. While we are not impressed with the arguments in support of these propositions, we do not deem it necessary to discuss or pass upon them, as the ordinance is held invalid for the reasons previously stated.

The judgment is reversed and the cause remanded, with a direction to the lower court to grant a temporary writ of mandamus to the relator for the relief asked. All concur.