## WILSON & CO., INC., *v* HOLMES.

Division A. Nov. 22, 1937. Suggestion of Error Overruled Jan. 3, 1938.)

[177 So. 24. No. 32874.]

C. F. Patterson, of Natchez, for appellant.

**Jos. E. Brown,** of Natchez, for appellee.

**McGehee, J.,** delivered the opinion of the court.

Appellee recovered judgment in the circuit court of Adams county for damages in the sum of $1,500, on account of a personal injury to his shoulder and arm, which was sustained, according to the finding of the jury, while working as an employee of the appellant, Wilson & Co., Inc., at its box factory located at Natchez, Miss. The case is predicated on the alleged failure of the employer to furnish the employee a reasonably safe place to work, and a safe and suitable appliance with which to do the work in which he was engaged. It was shown, however, without any dispute in the testimony. that the appliance in question was an approved type and standard equipment, commonly used in all box factories, and was not a defective, dangerous, or unsafe appliance. Hence, the only issue to be decided is whether under the facts disclosed by the testimony the master failed to exercise reasonable care to furnish the servant a reasonably safe place to work, and whether such failure, if any, was a proximate cause of the injury and damages sued for.

The proof discloses that the appellee's work consisted in the main of placing the ends in the boxes being manufactured from lumber and lumber veneer in the plant of

the appellant; and that on the occasion in question it became necessary, as a part of his duties, for him and a fellow employee to move some empty boxes out of the way and to another part of the factory building. The floor space of the plant covered a large area, and the proper and customary method of moving the boxes was to stack them in bales on a conveyor or roller platform, commonly called a "roller-jack," each bale containing about ten flat boxes, and the conveyor consisting of a platform about thirty inches wide and four or five feet long with a steel frame underneath and under which were four iron wheels, seven inches in diameter, on an axle approximately seven inches in length between the front wheels and about fifteen inches in length between the rear wheels. The boxes were then placed on the conveyor in two stacks, so that one would support the other, and they covered slightly more than the entire platform. It then became the duty of appellee to hold and steady the stacks of boxes on the conveyor while a fellow employee pulled it across the building to where they were going to be unloaded.

Appellee testified that on the occasion in question the conveyor, which he says was loaded with boxes in the proper and customary manner, was moved and rolled by him and his fellow employee along the floor of the plant for a distance of approximately sixty or sixty-five feet when the boxes fell and injured his shoulder, at a time when, as he testified, "we were carrying the load along and Patt was pulling the jack, and we took them back of the mill and there were some cleats I noticed afterwards and as we were fixing to back up, it hit some cleats and caused the load to turn over on me and bruise my shoulder, and I caught myself." It is shown that this load of boxes, including the height of the conveyor, was at least seven feet high from the floor to the top. The testimony of the appellant shows that the boxes were stacked by the appellee and his fellow employee on the

conveyor in only one stack, instead of the two stacks required for the proper and safe transporation thereof. The appellee testified, however, that they had been stacked already by some one else, in the usual and customary manner, when they went to get and move them, and that they were not improperly stacked. Appellee further stated, in substance, however, that no one ordered him to assist in moving the conveyor loaded with the boxes stacked that high, and that there was nothing to prevent his taking off some of the boxes from the stack before attempting to move the conveyor.

There is considerable testimony to the effect that the floor of the building was worn, rough, and uneven in places, but the proof is indefinite and uncertain as to the depth and size of any depression in the floor, or as to the extent of any worn, rough, and uneven surface, at the point where the accident occurred, and the testimony is insufficient to establish a causal connection between the existence of such defects in the floor and the injury complained of. Moreover, the appellee's own explanation, hereinbefore quoted, of how the accident occurred, renders all the testimony wholly immaterial in regard to the condition of the flooring itself; and it was error for this issue to have been embodied in an instruction on behalf of the appellee on the question of failure to furnish a reasonably safe place to work, since it is necessary that such failure shall constitute a proximate cause of the accident and injury complained of in order to furnish a basis for a recovery of damages for negligence.

Finally, therefore, the point for decision here in determining whether or not the appellant was entitled to the peremptory instruction asked for is whether or not there was a failure on the part of the master to exercise reasonable care to furnish the servant a reasonably safe place to work, in that appellant permitted the presence of the cleat or cleats on the floor of its factory at the time

complained of, if it can be said that they were a proximate cause of the injury sued for. It is not shown whether the cleat or cleats were fastened down or were loose on the floor; whether they had been there for a week, a day, an hour, or for only a few minutes; whether the employer knew, or had been afforded sufficient opportunity to learn, of their presence on the floor prior to the accident in question; whether they were there, and permitted to remain there, because of negligence on the part of the employer, or as an ordinary incident to the progress of the work of cutting the lumber and veneer into proper lengths inside the factory building for use in the manufacture of boxes; whether they were of an appreciable size and thickness; whether the appellee was performing, or attempting to perform, his duty in regard to holding and steadying the boxes on the conveyor at the time they fell; whether the appellee and his fellow servants were exercising any degree of care as to the manner of moving and rolling the conveyor on which the boxes were loaded at the time they became unbalanced and fell; and whether it was necessary in the exercise of reasonable care by the said employees for their own safety that the conveyor should be caused to run over or against such cleat or cleats in carrying the boxes to their destination, instead of going on either side of them.

While it is true that the jury decided the question presented by the conflict in the testimony as to whether the boxes were properly loaded and stacked on the conveyor, and as to whether they were in fact loaded thereon by these two employees themselves, yet there were no facts testified to or disclosed on the trial to enable the jury to intelligently pass on the other questions hereinbefore mentioned so as to determine whether the appellant was guilty of any actionable negligence in allowing the presence of the cleat or cleats on the floor at the time of the accident, as constituting a failure to exer-

cise reasonable care to furnish appellee a reasonably safe place to work and a proximate cause of the injury.

Moreover, it is shown that appellee had been working in this factory for a period of six years, and had, on numerous occasions, stacked this type of box on such a conveyor and moved them to other parts of the building. And it was shown, without dispute, that boxes were being continually moved over this flooring, both day and night, and the proof shows that none of them had ever become unbalanced or had fallen from such a conveyor when being moved prior to the occasion complained of, except in instances where they were improperly loaded by placing one stack on the platform of the conveyor, instead of two as instructed.

It was also shown by the testimony of appellee's fellow employee, and expressly admitted by the appellee, that at the time these boxes fell, appellee was asked whether they struck him, and he replied, "No, they did not strike me;" and that he further admitted that he then in fact denied to his fellow employee that the boxes struck him. The fact that appellee made these statements at the time of the alleged injury, and admitted having made them when on the witness stand, was never explained or retracted, notwithstanding that he later testified that the boxes struck him on the shoulder when they fell. At any rate, the testimony shows, without contradiction, that he worked throughout the remainder of that day and through the next day, and then was off for the Christmas holidays, returning to work on the following Monday and continuing through Wednesday, and then was operated on at a local hospital on the following Saturday for an abscess on his shoulder, which he testified was caused by the injury complained of, and which the jury adopted as true. Later he worked at another box factory for about three weeks, but had not worked any during the three weeks prior to the trial in

the court below, due to the fact that the night crew of which he was a member had been laid off.

Assuming therefore, since the jury has so found, that the appellee sustained the injury and damages complained of by reason of the falling of the boxes in question, but recurring to the question of the liability of the appellant for the injury and damages resulting therefrom, it was held in the case of Hooks v. Mills, 101 Miss. 91, 57 So. 545, that the duty to furnish a safe place to work is not absolute, but it is only required that the master exercise reasonable care to do so; and while it is true, as held in the case of Finkbine Lumber Co. v. Cunningham, 101 Miss. 292, 57 So. 916, that the law imposes on the master not only the duty of furnishing the servant a reasonably safe place to work, but also the duty of keeping it reasonably safe, nevertheless the law does not require that the place be kept absolutely safe at all times. And the duty of the master in this regard was restated in the recent case of Columbus & G. R. Co. v. Coleman, 172 Miss. 514, 160 So. 277, 279, as follows:

"It is the universal rule wherever the common law prevails that the duty of the master in regard to tools, equipment, and places to work is not that of an insurer, is not an absolute duty, but is simply to exercise reasonable care to furnish the servant with reasonably safe tools and appliances, and likewise as to a safe place to work. Gulfport Creosoting Co. v. White [171 Miss. 127], 157 So. 86, 87.

"The rule is that the master is not required to furnish the newest, best, and safest machinery, appliances, and places to work, but his obligation is met when he exercises reasonable care to furnish such as are reasonably safe and suitable for the purpose had in view. Vehicle Woodstock Co. v. Bowles, 158 Miss. 346, 353, 128 So. 98.

"In order that a person, doing a particular act which results in injury to another, shall be liable therefor, the act must have been of such character and done in such

372

situation that the person doing it should have reasonably anticipated that some injury to another will probably result therefrom. Actionable fault on the part of a defendant must be predicated on action or nonaction, accompanied by knowledge, actual or implied, of the facts which make the result of his conduct not only a probable result, but a result also which he should, in view of those facts, have reasonably anticipated. Williams v. Lumpkin, 169 Miss. 146, 152, 152 So. 842.''

Appellant was only required to maintain its floor in a reasonably safe condition and guard against such accidents as a reasonably prudent person, under the circumstances testified to, could have anticipated or foreseen. Therefore, under the rule announced in the foregoing authorities, it becomes necessary to hold, under the facts of the present case, that the appellant was entitled to the peremptory instruction asked for.

Reversed, and judgment here for appellant.