SUPREME INSTRUMENTS CORPORATION *v.* LEHR.

(In Banc. Dec. 23, 1940. Suggestion of Error Sustained, March 24, 1941.)

[199 So. 294. No. 34278.]

(In Banc.  March 24, 1941.)

[1 So. 2d 242.  No. 34278.]

602

H. Talbot Odom and W. M. Whittington, Jr., both of Greenwood, for appellant.

Forrest B. Jackson, of Jackson, for appellant.

**W. M. Montjoy** and **Alfred Stoner,** both of Greenwood, for appellee.

606

607

H. Talbot Odom, W. M. Whittington, Jr., and Forrest B. Jackson, for appellant on suggestion of error.

Alfred Stoner and W. H. Montjoy, for appellee on suggestion of error.

Argued orally by **H. T. Odom** and **Forrest B. Jackson**, for appellant, and by **Alfred Stoner**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellee was an employee of the appellant and recovered a judgment against it for an injury received by her because, as she alleges and the jury believed, the appellant failed to exercise reasonable care to keep a portion of its premises furnished by it to its employees for use in connection with their work for the appellant in a reasonably safe condition. The appellant objects to quite a number of the rulings of the court below, none of which presents reversible error, if error at all. The only assignments of error we deem it necessary to discuss challenge the refusal of the court below (1) to direct the jury to return a verdict for the appellant; and (2) to

grant the appellant three separate instructions directing the jury not to consider any of the acts of negligence alleged in the appellee's declaration.

The appellant is engaged in a manufacturing business in Greenwood, Mississippi. The front room of its place of business is set apart for use by its office force. In one corner of the back of this room a small corridor was cut off from it by walls several feet lower than the ceiling. On this corridor was constructed two small rest rooms for the use of appellee's employees, one for men, and the other for women. In the women's rest room were a lavatory, a commode, and an electric light. There were no electric lights in this corridor, and it received no direct light from any source. It did receive some indirect light from electric lights in the main office, when lighted, from plate-glass windows in the front of the office, and an overhead sky-light, resulting, according to the evidence for the appellee, in the corridor being very dimly lighted, being "about like twilight." The witnesses for the appellant admitted that the light in the corridor was dim, but that one wouldn't "have any trouble getting around in there because of poor light." The floors of these rest rooms were elevated above the floor of the corridor, and the rooms were entered from the corridor through a door by means of two steps, the second step being the floor of the room itself. These steps were without a handrail, and would be within the range of the light in the rest room when, but not unless, the door thereto was open. The doors of these rooms opened inward and the floors thereof projected an inch over the first steps. The appellee's complaint as to these steps is that the tread of the first step was too narrow and the rise or height of each was too great, that is, narrower and higher than the safety of one using them required. At the time of the trial these rest rooms had been torn out and abandoned by the appellant because of other changes made in its premises, but the steps into them had been preserved and were shown to the jury at the trial. The step to the wom-

en's rest room was measured by a witness in the presence of the jury, disclosing that the height or rise of the first step is eight and seven-sixteenth inches, and its width or tread is ten and seven-sixteenth inches. The step was sent to the clerk of this Court by order of the court below, and these measurements have been verified and found to be correct. The jury were warranted in finding from the evidence that the floor of the rest room was eighteen or more inches above the floor of the corridor. Consequently, the rise from the step proper to the floor of the rest room, which served as a second step, was nine and nine-sixteenth inches. The inch projection of the floor of the rest room over the first step would reduce the width of the tread of the step, for practical purposes, one inch, leaving it for practical purposes nine and seven-sixteenth inches in width. According to the evidence for the appellee, which seems not to have been denied, the accepted standard for the width of the tread of such steps is ''eleven inches or better,'' and the standard for the rise or height between such steps is ''six or seven inches—not over seven inches.''

This rest room had been in use for more than two years, and the appellee herself had used it for about that length of time. No complaint seems to have been made by anyone to the appellant as to any trouble in the use of the steps in entering and leaving the rest room, though one of its employees testified that she had ''stumbled (there) several times slightly.''

On the afternoon of a day in June, 1938, the appellee when leaving the rest room pulled the door behind her by its knob in the usual and ordinary way for closing it, stepped down on the first step and fell and injured herself severely and permanently. How she came to fall can best be told in her own language, from which it will appear that she practically reenacted the scene before the jury: ''I took this foot (indicating) to step down to make the first step. Part of my foot was off that step and my heel got caught and I lost my balance. I knew

I lost it and was falling this way (indicating) and this foot (indicating) caught and dragged and my shoe heel caught on the top step of the rest room. I was falling forward. The girl in there with me had started out and turned around to see what I said and she saw me and tried to catch me and broke the fall, and I twisted my knee up under me and I hit on the concrete floor to the east of this narrow awkward step.''

The appellee's complaints are that the appellant failed to exercise reasonable care to make the way of entrance to and exit from this rest room reasonably safe, in that the steps were without a guardrail, the tread thereof was too narrow, the rise too great, and the corridor into which the steps lead, and consequently the steps themselves, was too dimly lighted. The mere statement of the case would seem to be sufficient to demonstrate· that whether the appellant was negligent in the construction and maintenance of this entrance into this rest room was a question for the jury, and not for the trial judge. The absence of proper lighting, in event the jury should find that there· was such, would be of itself sufficient to warrant the jury in drawing an inference of negligence. An additional ground therefor would be the improper construction of the steps, if the jury also found that such was the case. A guardrail may not have been necessary had the steps been properly constructed and lighted, but if improperly constructed or improperly lighted, a guardrail would have decreased the danger therefrom, and, consequently, its absence under the circumstances would be one element of the appellant's negligence. The appellee's complaint is not ''cribbed, cabined, and confined'' by any one of these alleged elements of negligence, and if negligence in the maintenance of these steps appears in all or any one of these elements, the appellee was entitled to recover for the injuries sustained by her. From this it necessarily follows that the court below not only committed no error in refusing to direct a verdict for the appellant, but also committed no error in refusing to

charge the jury for the appellant that they could not award the appellee a recovery on the ground of the improper construction of the steps, that the corridor was insufficiently lighted, or that there was no guard rail at the steps.

Affirmed.

## Dissenting Opinion.

**McGehee, J.**, delivered a dissenting opinion.

I am unable to concur in the affirmance of the judgment appealed from in this case, and for reasons which it seems to me should appear obvious from a consideration of the facts stated in the foregoing opinion. It is to be conceded that the true condition of the premises complained of has been accurately portrayed therein, and with sufficient detail for a correct determination of the legal question here involved. Moreover, we have had the benefit of a personal examination and inspection of the doorstep which is claimed to have been improperly constructed, and have had an opportunity to look at it in the consultation room here almost daily for nearly a month. It speaks for itself. No testimony was offered, nor could any have been produced, to disprove at the trial that which we now see. The measurements as to the height of the step and the width of its tread are undisputed, and we have verified them and found that they are as stated in the opinion affirming the case. No complaint is made as to the length of this step. We see that it is substantially built with sound lumber, and has a smooth and varnished surface. It is not claimed to have been insecurely fastened. We fail to see anything on it against which the plaintiff could have caught her shoe heel before falling, except the front edge. The top of every step appears to have a front edge. The young lady's own explanation as to how she fell, as quoted in the opinion concurred in by the majority of the Court, clearly shows that she accidentally caught her shoe heel on the front edge of the tread of the step now before us

or on the edge of the toilet room floor as she came out, and it is not claimed that there was any obstruction there. The only other interpretation to which her explanation of the fall is susceptible, as will be seen from the quotation above referred to, is that she caught one shoe heel on the edge of the step proper and then the other on the edge of the toilet room floor as she undertook to walk down to the general floor about eighteen inches below, the space being fairly well divided by the step now before us as shown by the admittedly accurate measurement of the height thereof set forth in the majority opinion of the Court. It is a matter of common knowledge that a space to be ascended of eighteen inches in height may be divided with only one intervening step without there being any basis for the inference of negligence on account of such construction. It is only necessary to consider the situation at farm houses and residences everywhere, owned by prudent men acquainted with practical conditions as to the safety of themselves and their families, and in office buildings, hotels, and other places in our towns and cities, in order to know that it is universally considered that steps of that size and character are reasonably safe. But it is contended that the tread or width of this step was too narrow in that it allowed a lady only nine and seven-sixteenth inches of forward space on which to rest her foot. I should hesitate to approve the suggestion that more space than nearly ten inches is necessary for a lady to place that part of her shoe where her weight is caused to rest when walking, even if I could entertain the thought. At any rate, I do not think that the affirmative of the proposition should be judicially declared. Both men and women by the thousands are known to use steps with a tread of less width leading into the galleries over our legislative halls during each session of our lawmaking bodies, and yet this Court is asked to approve an award of $6,500 in damages on the ground that steps were improperly constructed when they are as safe in every re-

spect as those furnished by at least ordinarily prudent officials of the state for the use of its citizens.

As to the absence of a handrail, the jurors knew, as well as we do, from common knowledge that where a space of only eighteen inches is to be ascended by means of an intervening step or steps it is not customary or required in the exercise of reasonable care that a handrail be provided. It is true that a handrail may have afforded the plaintiff a means of regaining her equilibrium when she accidentlly caught her shoe heel and started to fall. It is likewise true that if a fellow employee had been stationed there to catch her she would have avoided the injury, but we are dealing here with an alleged failure to exercise reasonable care to maintain the premises in a reasonably safe condition, that is to say, such care as would be reasonably expected of ordinarily prudent employers in like circumstances.

The remaining ground of complaint is that the corridor leading to the rest room was dimly lighted. The facts stated in the majority opinion, however, show that it was reasonably well lighted for the purpose for which it was intended to be used; as much so as common experience and observation would show in regard to a passage to any out of the way place for the use of employees when it is disconnected from the main office or place of business in which the duties of an employment are performed. To hold that the corridor was required to be better lighted on that June day during the daylight hours, is to announce a principle whereby we should next be expected to hold that railroad companies, industrial and manufacturing plants, furnishing outdoor toilets for the use of their employees must keep the passageway to the same properly lighted, at least in the nighttime, if any employee is on duty about the premises.

This Court has repeatedly held that the duty to furnish a safe place to work is not absolute, but that it is only required that the employer exercise *reasonable care* to do so. Hooks v. Mills, 101 Miss. 91, 57 So. 545; Vehicle

Woodstock Co. v. Bowles, 158 Miss. 346, 128 So. 98; Gulfport Creosoting Co. v. White, 171 Miss. 127, 157 So. 86, also holding that such duty is not that of an insurer; Columbus & G. R. Co. v. Coleman, 172 Miss. 514, 160 So. 277; Wilson & Co., Inc. v. Holmes, 180 Miss. 361, 177 So. 24. Moreover, there can be no liability for the doing of an act or the failure to perform a duty in a particular manner unless the person charged therewith should have reasonably anticipated that some injury to another would as a reasonable probability result therefrom. Williams v. Lumpkin, 169 Miss. 146, 152 So. 842; Wilson & Co., Inc., v. Holmes, supra. A mere possibility that an injury might result from a given situation is not sufficient under any of our decisions to create liability. Nor do we have a Workmen's Compensation Law in this state for awarding damages to an injured employee without proof of some act of negligence on the part of the employer. Neither the juries nor the courts are authorized to apply the principle of that legislation in the absence of an enactment of the legislature in that behalf, even though an employee has accidentally sustained an injury while engaged in the service of the employer.

I think that the peremptory instruction should have been given as requested, but that in no event should an issue as to whether the steps were properly constructed have been submitted to the jury. As to whether certain facts are sufficient to constitute actionable negligence under the law is, and always has been, for the decision of the Court; it is the province of the jury only to decide what the facts are when there is conflict in the evidence in regard thereto. We should, in my opinion, therefore determine here as a matter of law, as was true in the trial court, that there is no basis for the submission to the jury of any question of negligence on the condition of the steps. They were not required to be the best, nor to comply with any particular standard measurements. Columbus & G. R. Co. v. Coleman, 172 Miss. 514, 160 So. 277, and the case therein cited of Vehicle Woodstock Co.

v. Bowles, 158 Miss. 346, 128 So. 98. Only an expert would be presumed to know what the standard dimensions are as to width of the tread, and from time immemorial both men and women have been falling down steps, whether of standard make or not. The law only requires that reasonable care be exercised to the end that they be reasonably safe.

From common knowledge and experience I know that when I shall descend from one of the landings on the front steps of the Capitol building this afternoon at nightfall, it will be necessary to encounter at least one step with a tread as narrow as the one here involved, located immediately above others of greater width; and I shall do so with an abiding faith that the state has exercised reasonable care for the safety of its officers and employees as well as that of the general public. The law should not, and in my opinion does not, require greater care to be exercised by its citizens.

**Griffith, J.**, delivered a dissenting opinion.

Instruction No. 4, granted at the request of the plaintiff, and assigned as error, reads as follows: "The Court instructs the Jury that it is admitted in this case that the plaintiff was working for the defendant as its employee on the 17th day of June, 1938, and that the defendant maintained at that time a rest room for the convenience of its employees as an incident of their work; and you are instructed that it was the defendant's duty as plaintiff's employer to exercise ordinary care to keep and maintain the steps at the entrance to the said rest room reasonably safe, and if you believe from the evidence that the defendant did not exercise reasonable care in keeping the said steps entering the said rest room reasonably safe and that the defendant negligently and carelessly maintained said steps in a dangerous condition by allowing them to remain so narrow or by having one step so high above the other as to be likely to cause injury

and that by reason of such failure, if any, to maintain proper steps at the entrance of said rest room, said steps and entrance were rendered dangerous and unsafe for use by said employees and if you further believe from the evidence that on the 17th day of June, 1938, the plaintiff, while exercising reasonable care and while leaving the said rest room as incidental of her work as the employee of the defendant and that on account of such dangerous condition of said steps, if any, the plaintiff fell over the said steps and was injured thereby, and if you further believe from the evidence that said condition of said steps proximately contributed to her injury, then you will find for the plaintiff.''

It is thus seen that the jury was allowed to return a verdict upon the issue of the condition of the steps, and so far as we may know the verdict was rendered upon that single issue. Therefore, since it was error to give that instruction, our duty is to reverse for that error alone, even if there were no other.

In the first place, the facts about the condition of the steps are absolutely undisputed. The steps themselves, admittedly in the same condition as on the day of the accident, were brought before the court and jury and have been sent to this Court for examination on appeal. The facts about the steps being thus undisputed, there was nothing else in respect to the facts about them which the jury could apply except that knowledge which is common to the average man and springs from the ordinary relations and experiences of life. And, while in their adjudications the jury may use and apply their own knowledge and observations as regards such ordinary experiences and relations, we expressly held in Harris v. Pounds, 185 Miss. 688, 694, 187 So. 891, 893, with the support of the most eminent authorities, that the province of the jury ''in respect to the knowledge of facts which they may thus judicially notice and act upon, . . . is no broader than that of the judge on the bench,

who has the power and duty of supervision and review over jury verdicts.''

Inasmuch, then, as all the facts respecting the condition of the steps were undisputed and every feature of common knowledge or common experience which the jury could apply belonged also to the judge, what was there to submit to the jury as regards the condition of the steps, except to allow them to alter or amend the law of the land under the guise of a finding of facts? We have repeatedly said, as for instance in Dow v. Town of D'Lo, 169 Miss. 240, 247, 152 So. 474, 475, that ''it is not permissible, by the device and under the guise of a finding of facts by a jury, that the law of the land shall be altered or amended.''

When the facts are undisputed, nothing remains except to apply the settled law of the land to those facts; and this is the constitutional duty of the trial judge, and he has no more right to abdicate that duty in favor of the jury than he would to commit it to some bystander. And when the law of the land is applied it is (1) that an employer is not an insurer; (2) that he is not required to furnish a perfect appliance or place, he is not required to furnish the best or the safest, or in all conditions or places to comply with ideal standards; but (3) his duty is to use reasonable care, the purpose and place considered, to furnish a reasonably safe appliance or place, and (4) we have repeatedly held that where a pedestrian is concerned, which is the principle here, that the obligation is fulfilled when a place is furnished which is reasonably safe for the use of persons who in such use exercise reasonable care for their own safety.

The complaint about the steps is that to reach the floor of the toilet from the floor of the corridor, a height of 18 inches, only one step was used with the respective risers divided into approximately 8½ inches and 9½ inches and that the tread of this step was 10 7/16 inches in width. It is the contention, as it is to be assumed, that there should have been two steps with risers of 6 inches

each and the tread of the two steps should have been not less than 11 inches. Such a construction would have projected the foot of these steps more than 12 inches farther out into this narrow corridor, and if somebody in traversing the corridor had stumbled over the foot of the steps, the complaint would have been heard that the employer had negligently projected the steps too far out into the corridor.

There is not a syllable of substantial testimony that the distance of 9½ inches from the floor of the toilet room to the step had any causal connection with the accident, that this distance rather than say 7 inches had anything to do with the catching of the shoe heel on the edge of the step. To say that there was any causal connection upon the stated feature of the riser is based upon pure assumption, an arbitrary assumption, which is never legitimately sufficient to support a verdict. The complaint must be referred, therefore, to the width of the tread, which, as stated, was 10 7/16 inches.

The difference between this width and the ideal standard of 11 inches, spoken of in the controlling opinion, is 9/16 of an inch. Can it be said, save by another arbitrary assumption, that had the tread been 11 inches wide instead of 10 7/16 inches the accident would probably not have happened? If we were permitted under the law to deal with possibilities in such a situation, an affirmative answer might be returned to the question stated, but not when the tangible probabilities are considered; and this is what we are to consider under the law, as we have over and over declared. And thus the case gets down to this: That because the tread was a fraction of an inch less than that said to be an ideal standard for stairways generally, then there is liability, which is to say that unless such a step is the safest and best according to the ideal standard for steps generally, the employer was negligent, and, moreover, that his said negligence may be assumed to be the proximate cause of the accident; and this, as already mentioned, is not the law in this state.

Judge McGehee has spoken of the fact that it is the common knowledge of all who have ever ventured beyond the environs of their own door sills that steps of the size and character here before us are found everywhere, including the Capitol building of the state. The steps leading to the galleries of both the Senate and the House of Representatives have treads measuring exactly 10 7/16 inches, which, as stated, is the measurement of the tread in the steps involved in this case, and at one place in those galleries the steps have a tread of only 9½ inches; and the top step in the first flight of the broad approach at the front of the Capitol building, over which a million persons have passed, has a tread of 9½ inches. The top and the bottom tread in the auxiliary stairway leading from the ground floor to the Supreme courtroom, where we hold our sessions, measure 10 7/16 inches, the same as the tread which is arbitrarily condemned in this case. Our Capitol building was designed by and built under one of the country's greatest architects, and under the eyes daily of a commission from among the state's most distinguished and most prudent citizens. These stairs have been for a generation used by thousands of the people of the state and other states, and yet we sit here and permit it to be said by a trial court that when an employer uses steps with a tread of that precise width as an approach to an humble toilet room, he is guilty of actionable negligence.

Three of the four large modern hotels in the capital city have stairways leading from the main floor to the men's toilet rooms in the basement. The treads of these three stairways are 10 7/16 inches wide. The largest and most recently constructed general office building in the city has a similar stairway and its treads are 9½ inches.

With the affirmance of this judgment what has been done here is to make the employer an insurer, to hold him to the highest standard, rather than the standards which the law has pronounced—there has been sanctioned the

taking of a large sum from one person and the transfer of it to another, not by the law of the land, but by the device and under the guise of a verdict by a jury whereby the law of the land has been altered or amended.

This dissent has been written, not because I supposed it could add anything to the strength or cogency of the dissent by Judge McGehee, but because it was my desire to confine my discussion to the steps, since, if properly decided, this alone would result in a reversal.

### On Suggestion of Error.

**Alexander, J.**, delivered the opinion of the court on Suggestion of Error.

This case was heard by this Court on a former occasion, resulting in an affirmance by a divided court of a judgment of the lower court in favor of the plaintiff. 199 So. 294. Upon suggestion of error a reargument was heard before this Court in banc, there being three members of the Court who, because of absence and change in personnel, had not participated in the former decision.

In view of the considered judgment of the Court that the suggestion of error ought to be sustained, we refer to the former majority opinion for a statement of the relevant facts as being adequate and fairly presenting the theory of plaintiff. A mere summary thereof should be sufficient here.

Plaintiff was an employee of defendant, and was injured when attempting to step from a lavatory or rest room, constructed as a separate unit inside its manufacturing establishment, where she was employed. The floor of the rest room was no less than eighteen inches higher than the main floor, and access thereto was effected by use of a step which almost equally divided this height. In other words, the step in question was eight and seven-sixteenths inches high, and its tread was ten and seven-sixteenths inches wide. The remaining distance to the floor of the rest room was, therefore, approximately nine

and nine-sixteenths inches. The step itself was before the trial court, and is before this Court for examination. Despite an unwillingness of plaintiff's counsel to concede the identity of the step in question, we are amply justified in accepting same as authentic.

An examination by us of this step reveals no structural defects. It is sound in construction and free of any latent or concealed defects. The record fails to disclose that it was insecurely fastened either to the floor or to the structure of the rest room into which it allowed access. The disparity in the height of the two risers—amounting to approximately one and one-eighth inches—could not be seen as a factor in the plaintiff's injury, even though such disparity be deemed ponderable. As shown, the plaintiff fell as she was emerging from the door of the rest room. Her testimony regarding the exact cause of her injury is not clear as to whether her heel caught upon the rest-room floor or upon the first step down. We must, however, here assume, favorably to her contention, that she tripped upon the step itself. Such assumption necessarily makes irrelevant the height of the first riser from the main floor to the step, since the fall originated in some cause located no lower than the first step. This narrows the issue of negligence insofar as the step is concerned to the inquiry whether a jury may be permitted to denounce as negligence the maintenance of a step with a tread of ten and seven-sixteenths inches with a riser of nine and nine-sixteenths inches. In passing upon such question, other factors are relevant, including the fact that the edge or nosing of the rest-room floor projected one inch above the tread, thus probably reducing its usable width when used in descent; the fact that such step was sound and secure in construction; and the circumstance, not adequately heretofore emphasized, that it was a step to a rest room. This last element, while not implying a relaxation of the substantive rule requiring the master to use reasonable care, does stress that the care to be exercised here was only to furnish a step

which, under the circumstances, was reasonably safe. The step does not have to be absolutely safe; it need not be reasonably safe, provided the master has used reasonable care to make it so. Meridian Grain & Elevator Co. v. Jones, 176 Miss. 764, 169 So. 771. In adjudging reasonable care and reasonable safety, we must keep in mind that reasonableness must be defined in terms of an expectation that the servant will exercise reasonable care in using the place or way. Newell Contracting Co. v. Flynt, 172 Miss. 719, 729, 161 So. 298, 743. This is particularly true in cases where injury is caused by missing one's step. City of Greenville v. Laury, 172 Miss. 118, 159 So. 121, 122.

There is nothing complicated about the step; there should be no intricacy in the rules of law applicable thereto. "In an action at law based on negligence, the question of negligence vel non is for the determination of the jury, unless the doing of the act which caused the injury complained of is not in dispute or conclusively appears from the evidence, and no inference except that of negligence or of no negligence can be justly drawn therefrom, in which event the question is for the determination of the trial judge." City of Greenville v. Laury, supra. Standards of construction are useful only for comparison. Deviations from such standards constitute negligence only when they constitute deviations from the standards of reasonableness. Even in the construction of steps where the nature, purpose, or extent of their use should require conformity to accepted standards, it is universally conceded that so long as such steps are of usable dimensions the controlling consideration is not the height nor tread of the particular step, but the maintenance of a reasonable ratio between the riser and the tread which recognizes the pacing cadence of the average person. The testimony in this case indicates that the sum of the tread and riser should approximate eighteen inches. Such total was in fact twenty inches, unless the one-inch projection of the

rest-room floor be deducted from the width of the tread, in which event the total would be nineteen inches.

In Pastrick v. S. S. Kresge Co., 288 Mass. 194, 192 N. E. 485, expert testimony fixed the proper sum of tread and riser at seventeen and one-half inches. Yet such sum as applied to stairs upon which plaintiff fell was approximately twenty and three-eighths inches. Although such construction was denounced by expert witnesses as being "not a good form of construction," the appellate court upheld a finding for the defendant, using the following language: "The court is not ignorant of common devices and common dangers, and no admission or expert opinion can establish liability where common knowledge shows that there was no danger so substantial that a reasonable man in the position of the defendant would have anticipated injury and guarded against it." See also Haddon v. Snellenburg, 293 Pa. 333, 143 A. 8; Toscani v. Quackenbush Co., 112 N. J. L. 173, 170 A. 212; Stark v. Franklin Simon & Co., 237 App. Div. 42, 260 N. Y. S. 691; Dickson v. Emporium Mercantile Co., 193 Minn. 629, 259 N. W. 375; Boyle v. Preketes, 262 Mich. 629, 247 N. W. 763, 765. In the last named case the Court said: "It has long since been recognized that falling downstairs, where the mishap was not imputed to unknown or concealed defects, belongs. to that class of ordinary accidents which ought to be imputed to the carelessness or misfortune of the sufferer."

In reversing a judgment for plaintiff who was injured in slipping upon a standard type of linoleum floor though highly polished, this Court said in Daniel v. Jackson Infirmary, 173 Miss. 832, 163 So. 447, 449: "The testimony fails to show that such installation, maintenance, and use is so unreasonably unsafe and impartial persons could hardly be in disagreement upon the issue." The doctrine of reasonable care acknowledges no double standard. We cannot believe that, had plaintiff been charged with negligence in maintaining a similar step for a similar purpose, we could allow a judgment against

her to stand upon a contention that such step was unreasonably unsafe and that in providing same she should be charged with a duty to anticipate that one to whom she owed the duty of reasonable care would, while exercising reasonable care for his safety, probably trip thereon.

Requisite care remains always that degree of care commensurate with appreciable danger appraised in terms of ordinary prudence and interpreted in the light of the attendant circumstances. Application of this principle leads to results which give play to such varying factors as time, place, and purpose. Although the expression and the basis of the rule remain fixed, its flexibility permits accommodation to each particular case. The area of factual doubt within which juries should be allowed to function is circumscribed within a circle of which care is the axis and reasonableness the radius. Within this area reasonableness is to be adjudged by reasonable men, and their right to differ is commensurate with their duty to consult. Beyond this limit lies the field of substantive law. Here are found those issues as to which reasonable men should not be in disagreement. It is here that "the court is not called upon to decide the issue of fact one way or the other, but it is called upon to decide whether there is an issue of fact under the law to go to the jury." City of Hazlehurst v. Matthews, 180 Miss. 42, 176 So. 384, 385. As was said by Cardozo, J., in People v. Galbo, 218 N. Y. 283, 112 N. E. 1041, 1045, 2 A. L. R. 1220, "insufficient evidence is . . . no evidence." Absence of a handrail under the circumstances cannot be held to be negligence, much less a contributing proximate cause of the injury. Any defect, therefore, was not in the step but in the stepping. No negligence may be predicated upon the construction or maintenance of the step in question.

We come now to the question whether the testimony relating to the amount of light available to plaintiff in using the step raised an issue of fact properly to be determined by the jury. Here, again, the duty of the de-

fendant is to be gauged with reference to the factors of time, place, and purpose. Plaintiff's testimony showed that, although there were transoms across the front of the building, the light therefrom was "very little." There was a skylight about seven by eight feet in dimension near the centre of the building, but the full force of the light from the skylight could not reach the passageway down which one must pass to the rest room. Although there was a light in the rest room, there was no direct light in the passageway itself; its light came from the skylight which was located approximately ten or fifteen feet from the steps. The steps were upon the opposite side of the rest room from the skylight, and the rest room was so constructed that it was a separate unit from the main room and its walls did not extend to the ceiling. Materials stored upon the top of the rest rooms further obstructed the light. Thus the light from the transoms and the skylight came from over the top of the rest rooms, or penetrated the corridor leading thereto indirectly. Although the light inside the rest room was adequate for use there, the plaintiff testified that when this light was made available to the outside by opening the door, the effect was rather to blind the eyes than to serve them. It was conceded, however, that when the door was opened the light fell upon the step. Other witnesses for plaintiff testified that there were no lights installed for direct illumination of the passageway, which was about four and a half feet wide and twelve feet long. There were some cabinets stacked along the wall and the usable portion of the way was reduced to the extent of these, as well as the step entering respectively the two adjoining rest rooms. The door to the ladies' rest room was approximately nine feet from the end of the passageway. A witness estimated the distance at twelve feet, but the passageway was created by the wall on one side and on the other by the two adjoining rest rooms, which were each six feet long. The ladies' room was located at the far end of this way and the step and door thereto were located just beyond

the middle thereof. There were lights burning in the main office, but these shed only an indirect light into the passageway. There is much testimony regarding the location and strength of the lights which were being used at the time. Most favorably expressed for the plaintiff, this testimony may be summarized by generalizations used by her and her witnesses, that the light in the passageway was "dim" and "about like twilight." In addition, there are available such inferences as may be drawn from the fact that the accident occurred near the middle of the day or early afternoon in June, 1938. One of the plaintiff's witnesses testified "it was a hot glaring day and the inside was dark." It is also relevant that plaintiff had been employed in the same place for nearly three years during most of the time the situation as to the steps had existed. This consideration is not made as invoking against plaintiff an assumption of risk, but as a circumstance relevant to the reasonableness of the safety of the particular place. As was stated in Boyle v. Preketes, supra: "From plaintiff's own testimony, as well as from other uncontradicted testimony, it conclusively appears that the illumination was such that plaintiff could have seen the steps had she looked. There is no credible testimony that defendants were guilty of negligence in failing to properly light their place of business."

So long as there was maintained a degree of visibility consistent with common practice in which deference is made to both propriety and duty, a jury should not be permitted to impose upon the defendant a higher duty in respect to the particular convenience here furnished for plaintiff's comfort than they, as reasonable and representative men sharing a common knowledge, have demanded or assumed. We imply no exception to the doctrine of reasonable care and safety, but hold that neither the step itself, nor the lighting by which it was located and identified, nor the combination of both, were susceptible of condemnation as a failure to use reasonable

care to furnish a place which, under the particular circumstances here involved, was reasonably safe for one exercising reasonable care in the use thereof. Courts will not be presumed to be visionless . . . Theory should not outweigh practice and experience, and evidence which contests and contradicts the evidence of the senses must be received with caution." State ex rel. v. Clifford, 228 Mo. 194, 128 S. W. 755, 758, 21 Ann. Cas. 1218. As stated in Hercules Powder Co. v. Calcote, 161 Miss. 860, 138 So. 583, 584, "the case arouses a sympathetic interest, but we think there is no proved liability as against the appellant here." Although completely aware of the duty of this Court to repel any invasion into the realm of the trial jury (Williams Yellow Pine Co. v. Henley, 155 Miss. 893, 125 So. 552; Brown v. State, 153 Miss. 737, 121 So. 297), and that "it must be a rare case of negligence which the court should take from a jury" (Bell v. Railway Co., 87 Miss. 234, 30 So. 821), we must recognize the reciprocal duty of the Court to guard against any misapplication of substantive principles in those cases where the admitted facts do not justify their invocation. The peremptory instruction requested by the defendant ought to have been given.

The suggestion of error is, therefore, sustained, and the cause reversed with judgment here for the appellant.

Reversed, and judgment here for appellant.

DISSENTING OPINION.

**Smith, C. J.**, delivered a dissenting opinion.

I am of the opinion that this case was correctly decided at the former hearing, and adhere to the opinion rendered by the majority of the Judges then participating in that decision of the case. Of the three Judges composing that majority, Judges McGowen, Etheridge and myself, the first two are no longer members of the Court, Judge McGowen having been removed by the hand of death, and Judge Etheridge by the expiration of his term of office.

The suggestion of error should be overruled.